The State ex rel. Attorney General, Respondent, vs. Portage City Water Company, Appellant.

*September 10 — September 25, 1900.*

*Franchise: Grant by common council: Corporate franchise: Corporations: Forfeiture of charters: Statutes: Circuit courts: Jurisdiction: Quo warranto.*

1. A special privilege granted by sovereign authority, either to an individual or a corporation, is a franchise.

2. It is not essential to a franchise that the grant be made direct; it is sufficient if it be made through a legitimate legislative agency.

3. A grant made by the common council of a city, by authority of its charter, to construct, maintain, and operate a system of waterworks

The State ex rel. Att'y Gen. vs. Portage City Water Co.

in such city and to use the streets and alleys thereof for that pur-
pose, is a legislative grant through the medium of an authorized
legislative agency, and is a franchise.

4. A franchise granted to an organized corporation, or to an individ-
ual or individuals, and thereafter transferred to a corporation,
is not a corporate franchise strictly so called, or in any sense, ex-
cept that of being property of the corporation.

5. Sec. 3241, Stats. 1898, covers only the subject of the forfeiture of
charters of domestic corporations for the reasons therein men-
tioned.

6. The enactment of sec. 3466, Stats. 1898, into statute law was not an
adoption of 9 Anne, ch. 20, sec. 4, with the English construction
thereof, but of sec. 28, tit. 2, ch. 9, pt. III, 2 R. S. N. Y. 1829, and the
construction thereof by the New York courts.

7. Unlike the statute of Anne, sec. 3466 contains no word or words of
limitation as regards the meaning of the word "franchise," but it
is used in its general sense, so as to include franchises regardless
of whether they are corporate or not.

8. The constitutional jurisdiction of the circuit courts of this state,
subject to exceptions mentioned in the constitution, extends to all
civil matters, including those covered by sec. 3466, and such juris-
diction under such section may be exercised under sec. 3463, the
statutory substitute for *quo warranto* proceedings and the remedy
by writ of *scire facias* at the common law.

9. The word "person" in a legislative enactment includes a corporation
if that appears to have been the legislative intent, and that is gov-
erned by the rule of statutory construction in sec. 4971, Stats. 1898,
and elementary principles as well. Such word in sec. 3466 is so
governed.

10. Proceedings by *quo warranto* at the common law were proper to re-
claim a franchise, whether corporate or not, for abuse of it or non-
performance of a condition of the grant, and jurisdiction in that
regard is complete regardless of sec. 3466, the remedy being under
sec. 3463, the statutory substitute for the common-law remedy.

11. A proceeding to forfeit a franchise owned by a corporation, which
franchise is not dependent upon corporate existence, may be main-
tained against the corporation entirely independent of whether it
be a domestic or foreign body.

12. If the owner of a franchise fail to perform the conditions of the
grant, the franchise is thereby ended, and an action may be brought
by the attorney general in the name of the state to obtain a judi-
cial declaration of the forfeiture, either under sec. 3466, Stats. 1898,
or by the rules of the common law.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

Action in the name of the attorney general to forfeit a waterworks franchise, so called, granted by the city of Portage, Wisconsin, to individuals, and subsequently assigned by them to the defendant. The complaint states, in substance, that the defendant is a foreign corporation; that April 15, 1887, the common council of the city of Portage, a municipal corporation of this state, granted to Moffett, Hodgkins & Clarke, their heirs and assigns, the right to maintain a system of waterworks in said city, said grant being made by ordinance, a copy of which was made a part of the complaint; that such ordinance was duly accepted, and that, pursuant thereto, since 1897, the defendant has maintained the authorized system of waterworks, to furnish water for public and private use in said city; that said ordinance, among other things, required the maintenance of fire hydrants, and provided that such hydrants should be kept, night and day, unavoidable accident excepted, supplied with water for fire services, and protected from freezing, and that if the grantees of the franchise, their successors or assigns, should at any time fail to supply an adequate amount of water for fire and other public and private purposes as provided therein, for a period of two weeks continuously for any cause other than fire, floods, acts of God or the public enemies, the contract made by the ordinance and the acceptance thereof should be null and void, and all rights, privileges, and franchises granted by such ordinance should be forfeited and cease; that defendant failed to keep the fire hydrants supplied with water and failed to keep them protected from freezing, and further failed to supply water for fire and other public and private purposes, from the 1st day of February, 1898, to the 1st day of July, 1899, solely through its negligence and carelessness. Several other violations of material provisions of the ordinance referred to

were alleged. Judgment forfeiting and annulling the franchise was prayed for. Defendant demurred to the complaint upon the grounds, among others, of want of jurisdiction of the court over the subject of the action, and insufficiency of facts to 'constitute a cause of action. The demurrer was overruled, and defendant appealed.

For the appellant the cause was submitted on the brief of *Hume, Oellerich & Jackson.*

For the respondent there was a brief by the *Attorney General,* and *C. A. Fowler* and *Burr W. Jones,* of counsel, and oral argument by *Mr. Jones* and *Mr. Fowler.*

MARSHALL, J. In the decision of this appeal, the order in which the case is presented in the briefs of counsel will not be followed. Neither will time and space be taken to review the interesting history of *quo warranto* proceedings with which the court is favored. The law as regards the general scope of such proceedings at common law is too well settled to require going back to its origin and tracing it down to the present time in order to make a proper application thereof to the facts alleged in the complaint, under our statutory substitute for the common-law proceeding.

It is conceded that unless the privileges granted by the city of Portage to construct, maintain, and operate a system of waterworks within its corporate limits, and use the streets and alleys of the city for that purpose, constitute a franchise emanating from sovereign authority, this action will not lie either under the statutes or independent of them.

Counsel for appellant say the grant contained in the waterworks ordinance is not a franchise within the meaning of that designation of a legislative grant. There is authority for that contention, and much authority against it. This court has several times spoken on that subject in no uncertain language. The law in that regard is so firmly settled here that it is useless to go elsewhere for guidance, as what follows amply shows.

In *Ashland v. Wheeler*, 88 Wis. 607, the court held that the common council of a city, when acting by legislative authority, may make such a grant as the one in question, and if the grant be owned by a corporation it is as much a "franchise of the corporation" as if granted to such corporation by act of the legislature, for the common council exercises a delegated authority and what it does within that power is done by the legislature through its agency.

In *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, it was said that the rights, immunities, and privileges granted by an ordinance of similar character as the one in question but on a different subject, when possessed by a corporation, are "as much the franchises of the corporation as if they had been directly granted by the state under which it was organized. The common council is authorized to grant them by statute and such power is a delegated one. What the common council does within that power is done by the legislature through its agency."

In *Wright v. Milwaukee E. R. & L. Co.* 95 Wis. 29, the right to construct and maintain a street railway, granted by the common council of Milwaukee to individuals and subsequently acquired by the defendant corporation, was spoken of thus: "The right is something more than an easement, and more than a mere contract right. It is also a franchise granted by the state, acting through the common council of the city, to the railroad company. It becomes, when owned by a corporation, one of its corporate franchises, for failure to exercise which an action may be brought by the attorney general, in the name of the state, to vacate its charter, under Sec. 3241, R. S. 1878."

In *Stedman v. Berlin*, 97 Wis. 505, an action in equity to annul a waterworks franchise, it was held that such an action cannot be brought by the city or the taxpayers thereof in its right on the ground of fraud; that the granting of such a franchise is an affair between the city and the grantee, and

that it can only be reclaimed by *quo warranto* or *scire facias* at the suit of the state.

The cases cited where common-law terms are used, as that the franchise can be forfeited only by *quo warranto* or *scire facias*, must be read in connection with sec. 3463, Stats. 1898, which provides that all remedies heretofore obtainable by writs of *scire facias* and *quo warranto*, and by proceedings by information in the nature of *quo warranto*, may be obtained by civil action, and that it shall not be necessary to sue out such writs in form.

We may properly remark in passing, that it is not supposed that the terms " franchise of the corporation" and " corporate franchise," when used in the cases referred to, were intended to refer to corporate franchises, strictly so called,— franchises essential to corporate existence and granted as part of the organic act of incorporation, and that can be forfeited only by *quo warranto* proceedings or the statutory substitute therefor to vacate the charter of the corporation,— but the terms were used in that broad sense applicable to all franchises which a corporation may lawfully acquire. Much confusion often happens from a failure to distinguish between those franchises that are corporate in a strict legal sense and not really property of the corporation, and franchises acquired by a corporation after corporate existence commenced, that it may part with if they be assignable, or be deprived of without corporate existence being affected, and which may survive the death of the corporation. We should further remark in this connection that an action may be brought against a domestic corporation under sec. 3241 to forfeit its existence for abuse of public duty assumed by it under a franchise not corporate and to reclaim such franchise, as was said in *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612; but it does not by any means follow in all cases, as we shall see, that the statutory substitute for *quo warranto* proceedings

at common law cannot also be invoked to reclaim to the state a franchise not corporate, when it will not lie to vacate the charter of the corporation owning such franchise.

A question is raised as to the jurisdiction of the circuit court where a writ of *quo warranto*, or proceedings by information in the nature of *quo warranto*, were necessary at common law, upon the theory that the use of such writ and proceedings is an exercise of sovereign authority. That is sufficiently answered by sec. 8, art. VII, of the Constitution, and previous decisions of this court. Such section confers upon the circuit courts original jurisdiction in all matters, civil and criminal, within the state, not excepted by the constitution and not prohibited by law, together with power to issue writs of *habeas corpus* and *mandamus*, injunction, *quo warranto*, and *certiorari*. Jurisdiction of proceedings for the relief obtainable at common law by writ of *quo warranto*, or by proceedings by information in the nature of *quo warranto*, is neither excepted from the general grant of power mentioned, anywhere in the constitution, nor is it prohibited by law; therefore the court has such jurisdiction. The general grant of original jurisdiction is substantially without limit by anything found in the constitution, over all actions, civil and criminal. The scope of this general grant of authority was said in *Putnam v. Sweet*, 2 Pin. 302, and also in *Att'y Gen. v. Railroad Cos.* 35 Wis. 531, to include greater power than was probably ever before, in a free government, delegated to any one tribunal,— the united powers of the English king's bench, common pleas, exchequer, and chancery.

But it is said that this action cannot be brought under sec. 3241, because that only authorizes an action to be brought by the attorney general to vacate the charter and the existence of a private corporation created under the laws of this state, and that the appellant is a foreign corporation. That must be conceded. Such is the wording of the statute. It

is not contended that this action was brought or can be maintained under that section.

It is further said that the action cannot be brought under sec. 3466, and that there is no other statute referring to the subject. Sec. 3466 provides that, " An action may be brought by the attorney general in the name of the state, upon his own information or upon the complaint of any private party, against the parties offending, . . . when any person shall usurp, intrude into, or unlawfully hold or exercise any . . . franchise within this state." It is said that this statute was taken from 9 Anne, ch. 20, sec. 4, and that when so taken the English construction was that it only authorized proceedings against an individual or individuals, and as regards offices or franchises in corporations. It may be admitted that the construction of the English statute by the English courts is as claimed, and that it extends only " to instances affecting those rights between party and party,"— so said by Lord MANSFIELD in *Rex v. Williams*, 1 Burrows, 402. It may also be admitted that the language of our statute, in the main, came indirectly from 9 Anne, ch. 20, sec. 4, but it is not true that this state adopted the English statute in sec. 3466, or language of the same import, or that our statute is governed by the construction given by the English courts to the statute of Anne. Our statute came from New York. *Att'y Gen. v. S. & St. C. R. Co.* 93 Wis. 604. It is a literal copy of the New York statute. It is quite materially different from the English statute, as we shall see. The material part of sec. 4 of the statute of Anne is as follows: " In case any person or persons shall usurp, intrude into, or unlawfully hold or execute *any of the said offices or franchises*, it shall and may be lawful to and for the proper officer in each of the said respective courts, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of a *quo warranto* at the relation of any person or persons desiring to sue or prosecute the same," etc. It is im-

possible to understand the scope of that language without reading the preceding sections and the title of the act, which title confines the scope of the act to " rendering proceedings upon writs of *mandamus* and information in the nature of *quo warranto* more speedy and effectual, and for more easily trying and determining the rights of *offices and franchises in corporations and boroughs*." It will be seen that, by reading sec. 4 with what precedes it as regards franchises, it refers only to corporate franchises.

Our statute provides that, " An action may be brought by the attorney general in the name of the state upon his own information or upon the complaint of any private party against the parties offending,  . . .  when any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, *or any franchise within this state*, or any office in a corporation created by the authority of this state." Stats. 1898, sec. 3466. There is no word of limitation to be found, relating to franchises, as in the statute of Anne. It covers, in its literal sense, any franchise within this state, without regard to whether it is a corporate franchise or not.

True, as claimed by counsel for appellant, secs. 3241 and 3466 are found in close connection in the Laws of 1856, ch. 120, sec. 3241 being there sec. 334 and sec. 3466 being there sec. 336; but there is no connection whatever between the two sections as originally adopted. There is nothing in sec. 3466 which indicates in any way that it refers only to corporate franchises. Inasmuch as the law of 1856 was aimed at all civil remedies and was intended to establish a complete system of procedure in civil matters, it is not reasonable to say that a remedy for wrongs, as regards franchises other than corporate franchises, was omitted; yet such was the result of the legislative effort if appellant's counsel are correct in their contention. It cannot be contended but that the natural meaning of the word " fran-

chises " as used in the act, includes all franchises within the meaning of the term as understood at common law. And if we look to the end sought by the legislature, we must observe the literal sense of the word will effect that end, and no other sense will.

If we go further and look to the meaning ·of the act as understood in New York at the time of its adoption here, we reach the same result. *Thompson v. People ex rel. Taylor*, 23 Wend. 537; *People ex rel. McKinch v. Bristol & Rensselaerville Road*, 23 Wend. 222; *People ex rel. Att'y Gen. v. Utica Ins. Co.* 15 Johns. 358. We fully agree with counsel for the respondent that if the New York cases referred to decide anything, they decide that in a case like this an information in the nature of *quo warranto* before the Code, and the statutory substitute therefor afterwards, was proper under the New York statute, which was sec. 28, tit. 2, ch. IX, pt. III, 2 Rev. St. 1829, at the time of the decisions,— the statute that became our sec. 3466 by adoption; that such proceedings were proper when any person, natural or artificial, usurped or intruded into, or· unlawfully held or exercised, any franchise in the state, giving to the word "franchise" the broad signification which it had at common law, so as to include every privilege or immunity of a public nature which could only be legally exercised by authority of a legislative grant.

It was said in effect, in *People ex rel. Att'y Gen. v. Utica Ins. Co., supra*, that any privilege which was a franchise by the English common law is a franchise in New York, and that if a corporation unlawfully attempt to exercise such a franchise it can be proceeded against in an action brought by the people in the name of the state under the section we have discussed.

In *Thompson v. People, supra*, where it was sought to forfeit a bridge franchise owned by an individual, for breach of a condition upon which it was granted, it was said that

a breach of the condition ended the franchise, and any use
of it thereafter rendered the user liable to be proceeded
against by an information in the nature of a *quo warranto;*
that while the New York statute was taken from the stat-
ute of Anne, it is much broader and clearly embraces such
cases as the one under consideration; and if that were not
so, that the remedy was good at common law.

Much that we have said regarding the construction of the
word " franchise " applies to the word " person " in sec. 3466.
It cannot be questioned but that the word " person " in a
legislative enactment applies to an artificial person when
it is clear that such was the legislative intent, both by stat-
utory rules of construction (sec. 4971, Stats. 1898) and ele-
mentary principles as well.    *Chippewa Valley & S. R. Co.
v. C., St. P., M. & O. R. Co.* 75 Wis. 253, note; *Fadness v.
Braunborg,* 73 Wis. 279; *Larson v. Aultman & Taylor Co.*
86 Wis. 286; *Segnitz v. Garden City B. & T. Co., ante,* p. 171.
That such was the intent in the law in question is clear, be-
cause that accords with the construction in the place of its
origin, which the legislature must be presumed to have un-
derstood and adopted with the law itself, and because any
other construction leaves the Code incomplete. That is con-
trary to what we must presume was the legislative purpose.

We have not failed to give attention to the claim that
some courts elsewhere, having statutes similar to sec. 3466,
have construed them as extending no further than the stat-
ute of 9 Anne, ch. 20, sec. 4.    It is sufficient to say that we
are precluded from being guided by such authorities, be-
cause a contrary construction of our statute, in the state
from which we adopted it, is a part of the statute the same
as if it were embodied therein in the most unmistakable
language.    Moreover, as said in the New York case, it can-
not be seriously doubted but that at the common law this
action would lie regardless of the statute of Anne, and it
cannot be doubted but that all the jurisdiction the English

courts had in such matters is now vested in our circuit courts as a part of their constitutional authority, and may be exercised under sec. 3463 by civil action.

Proceedings to forfeit franchises were common in England centuries before the statute of Anne. That was, in the main, a mere regulation of procedure. It did not cover the whole subject, and did not add anything to the law as it had existed theretofore, except to give the right to institute the proceedings to a private relator, so that wrongs could be remedied "as between party and party." In 7 Comyn, Dig. 190, 191, it is said that "privileges and immunities of a public nature, which cannot be exercised without legislative authority, are franchises;" and that "a *quo warranto* is in the nature of a writ of right for the king against him who usurps or claims any franchises or liberties, to say by what authority he claims them." A large number of authorities will be found there cited covering a long period of time prior to the statute of Anne, and supporting the literal meaning of the text we have quoted.

In *Peter v. Kendal*, 6 Barn. & C. 703, an action for damages for the disturbance of a ferry franchise, it was argued that the plaintiff failed to show title to the franchise; that being out of possession there was no presumption of ownership because of the fact that the plaintiff once exercised the right; because it might have been inquired into and reclaimed by sovereign power by *quo warranto*. The court held that proceedings by *quo warranto*, where the right was extinguished, were proper only where the party proceeded against was in the illegal possession of the franchise; but that something more than mere negligence was necessary to destroy the right, because that may be waived, yet for mere negligence, even, the crown might repeal a grant by *scire facias* or *quo warranto*.

The question of whether proceedings by *quo warranto* are proper against a corporation to merely annul a franchise not

corporate was fully treated by Justice Cowen in *People ex rel. McKinch v. Bristol & Rensselaerville T. P. Road,* 23 Wend. 537, it being held on authority that such a proceeding is proper. It does not involve the existence of the corporation in any sense; hence no reason exists why a foreign corporation, holding a legislative grant to do some particular thing in this state, is not subject to the sovereign power of the state in·regard to such grant, the same in all respects as if it were a domestic corporation. No difference would exist at common law, and it is not perceived how any can exist under sec. 3466.

Some minor questions are discussed in the brief of counsel for appellant, to which we have not referred and which are not necessary to a decision of the appeal. The conclusion we have reached, and which must follow from what has been said, is that this action was properly brought, that the demurrer to the complaint was properly overruled, and that such order must be affirmed.

*By the Court.*— So ordered.