FORDYCE, Plaintiff in error, vs. THE STATE EX REL. KELLEHER, Defendant in error.

THE STATE EX REL. KELLEHER, Respondent, vs. FORDYCE, Appellant.

*September 25—November 28, 1902.*

Quo warranto: *Civil action: Change of venue: Calling in another judge: Trial at subsequent term: Offices: Power of legislature to prescribe qualifications: County superintendent: Judgment:* Res judicata.

1. An action of *quo warranto* brought in the name of the state by a private person, under sec. 3466, Stats. 1898, is a civil action in which a change of venue may be granted on the application of the relator.

2. Upon the filing of an affidavit of his prejudice, the circuit judge, under sec. 2625, Stats. 1898, called in another judge to hear the

case. Such judge attended accordingly and overruled defendant's demurrer to the complaint. Time to answer was given, and it was then stipulated by the parties that the cause should be placed upon the calendar of the next term for that county. *Held*, that the authority of the judge so called in terminated with the term at which he was called to attend, and at the next term it was proper, treating the application for a change as a continuing one, either again to call in a judge to hear the case, or to send it out of the circuit.

3. As to offices created by the legislature and which it may abolish at will—such as the office of county superintendent of schools,—the legislature may require such qualifications and prescribe such conditions of eligibility as the nature of the particular office may reasonably require.

4. In a proceeding by *mandamus* to compel a county clerk to place upon the official ballot the name of a candidate for the office of county superintendent, the petition for the writ did not state that such candidate was in fact qualified or eligible for the office under sec. 702a, Stats. 1898, and the only issue was whether the legislature had power to require (by sec. 38) a candidate for that office to file a certificate showing her eligibility before her name should appear on the official ballot. *Held*, that a judgment in favor of the candidate, on the ground that said sections were unconstitutional, was not a bar to a subsequent action of *quo warranto* by a citizen of the county to oust such candidate from the office on the ground that she did not have the qualifications prescribed by sec. 702a.

ERROR to review a judgment of the circuit court for Price county: E. W. HELMS, Judge. *Affirmed.*

APPEAL from an order of the circuit court for Price county: JAMES J. DICK, Judge. *Affirmed.*

This action is *quo warranto* to determine the right of *Elizabeth H. Fordyce* to hold the office of county superintendent of schools of Price county, Wisconsin. It was brought by the relator, as a resident and taxpayer. The relation alleges that the defendant received the greater number of votes at the November election in 1900, and was given a certificate of election; that she never was eligible to said office, and that her name was illegally placed on the official ballot; that on the first Monday in January, 1901, she unlawfully intruded into

said office, and has since exercised its functions and claims its emoluments. The defendant demurred to the relation on the ground that the relator had not legal capacity to sue.

The suit was brought in January, and in February, 1901, the relator filed an affidavit of the prejudice of Judge PARISH. The defendant's counsel objected on the ground that the action was criminal in its nature and no change of venue was legally permissible. On June 15th Judge PARISH made an order calling in Judge J. J. DICK to hear this and two other cases. Judge DICK appeared and heard the demurrer, which he overruled. Defendant was given time to answer, and thereupon the parties, by their attorneys, entered into a written stipulation that defendant should have until some date in November to answer, and that the action should be placed on the next calendar of the Price county circuit court, and stand for trial without notice. The term of court ended in December, 1901. The answer, among other things, set up that the defendant commenced an action in the year 1900 to compel the county clerk of Price county to place her name, as a candidate for the office of superintendent of schools of said county, upon the official ballot, and thereafter judgment was duly entered in her favor, requiring said clerk so to do.

The Price county term of court began on the second Monday of December [December 9]. On December 10th Judge PARISH made another order, reciting that affidavits of prejudice had been filed in several cases, including this, and calling in Judge E. W. HELMS to try the same. Judge HELMS appeared, and proceeded to hold court. Defendant's attorney entered many objections to his jurisdiction, all of which were overruled and excepted to. The case was tried, and a verdict rendered that defendant was guilty of intruding into said office as alleged in the relation. A motion for a new trial was denied, and judgment of ouster was duly entered. Thereafter defendant secured an order to show cause, signed by Judge DICK, why the order made by Judge PARISH, calling

Judge HELMS to preside, and all the proceedings taken before Judge HELMS, should not be vacated, etc. The matter was heard and taken under advisement. February 3, 1902, Judge DICK entered an order specifically denying each ground for relief claimed in the order to show cause. Due exceptions were filed, and the defendant took her writ of error to review the judgment, and appealed from the order of Judge DICK denying the motion to vacate. Both matters were argued together, and will be here considered in one opinion.

*Rublee A. Cole,* for the plaintiff in error and appellant.

For the defendant in error and respondent there were briefs by *Wickham & Farr,* and oral argument by *James Wickham.*

BARDEEN, J. This action is one under ch. 149, Stats. 1898, upon the relation of a citizen and taxpayer of Price county. It is plainly a proceeding in the nature of a civil action, although in the name of the state. *State ex rel. Wood v. Baker,* 38 Wis. 71; *State ex rel. Att'y Gen. v. Portage C. W. Co.* 107 Wis. 441, 83 N. W. 697; *Ames v. Kansas,* 111 U. S. 449, 4 Sup. Ct. 437. The claim, therefore, that it is a *quasi* criminal action, and one in which a change of venue cannot be secured, must be overruled. The statute (sec. 3466) specifically authorizes the action to be brought in the name of the state by a private person on his own complaint when the office usurped pertains to a county, town, city, village, or school district. *State ex rel. Curran v. Palmer,* 24 Wis. 63; *State ex rel. Cornish v. Tuttle,* 53 Wis. 45, 9 N. W. 791; *State ex rel. Nelson v. Mott,* 111 Wis. 19, 86 N. W. 569. *State ex rel. Atkinson v. McDonald,* 108 Wis. 8, 84 N. W. 171, distinctly rules against the contention of plaintiff in error.

It is urged with great earnestness that, when Judge PARISH made the order calling in Judge DICK to hear the case, he exhausted his right to make any further order in the case, and that all further proceedings are without jurisdiction. The statute covering cases like this is not entirely plain. Sec. 2625

provides that, when an affidavit of prejudice has been filed, the judge, in lieu of granting such change of venue, may, in his discretion, retain such action without entering an order changing the place of trial, until the last day of the then current term, and in the meantime may call upon some other circuit judge to attend and hold court during such current term. It then says:

"If such other judge . . . can so attend and hold court . . . the same shall be done with the same effect as if a change of venue to another circuit and a trial of such action had been had therein; but if no such judge shall so attend an order for a change of the place of trial shall be entered in each action wherein proper application has been made, on the last day of such term, and thereupon such change shall be made."

In this case the judge exercised his discretion to hold the case and call in another judge. Pursuant to such call, Judge Drcx appeared; and the pending demurrer was argued, overruled, and time to answer given. Thereupon the parties entered into a written stipulation that further time for answering should be given, and that the case should be placed on the calendar at the next term of the circuit court for Price county, and stand for trial without notice. It will be observed that the statute contains no provision as to what shall be done with the action in case another judge attends and the matter is not disposed of by final judgment. If the judge called upon to attend does not appear, then an order making a change shall be entered on the last day of the term. But in this case a judge did appear, and a trial of the legal issue was had. The defendant insists that, if the action was removable at all, an order of removal should have been entered on the last day of the term. But the statute does not say so. It is only when the judge fails to attend that such order shall be entered. We are met at this point, also, with the stipulation mentioned, that the case should remain in that circuit and go on the calendar at the next term of court. It is a serious question whether this stipulation was not a waiver of the application for such change of

venue. Without determining that question, we think the stat-
ute, despite the omission mentioned, can be so construed as to
effectuate its purpose and save the rights of parties under it.
When the December term of the circuit court for Price county
opened, the action was still pending therein, and the affidavit
of prejudice was still on file. Under the circumstances, we
think the court had a right to treat the application for a
change as a continuing one, and to call in another judge to
hear the case, or to send it out of the circuit. If this be not
so, then we have the anomaly of a pending action over which
no court had jurisdiction. Judge DICK had no power or au-
thority over it, because his right became exhausted when the
term at which he was called to preside expired. Judge PARISH
had no right to try it, because of the filing of the affidavit of
prejudice. Hence, to avoid the absurdity suggested, the stat-
ute must be construed to give him the power to again call in a
judge, as he did, to dispose of the case.

Another point made by the plaintiff in error is that the
judgment should be reversed on the ground that secs. 38 and
702a are unconstitutional. Sec. 702a provides that

"No person shall be eligible to the office of county superin-
tendent of schools who shall not, at the time of his election or
appointment thereto, have taught in a public school in this
state for a period of not less than eight months, and who shall
not, at such time, hold a certificate entitling him to teach in
any public school therein, or a county superintendent's certifi-
cate, issued by the state superintendent after examination and
upon recommendation of the board of examiners for state cer-
tificates as provided by law: provided, that the foregoing pro-
vision shall not disqualify any person who held such office in
this state on or before the first day of May, one thousand eight
hundred and ninety five."

Sec. 38 prohibits the county clerk from placing the name
of any person on the official ballot as a candidate for the office
of county superintendent of schools unless he possesses the
qualifications mentioned. The theory of counsel is that
eligibility to public trusts is a constitutional right, which

cannot be abridged or impaired; that, under the constitution, the electors and the appointing authorities are wholly free to confer public stations upon any elector, according to their pleasure; and that this results as a just deduction from the express powers and provisions of our constitutional system. As a general proposition, and as applied to strictly constitutional officers, this may be true. But the rule has certain qualifications. The constitution prescribes no definite qualifications as to eligibility to the office of attorney general or district attorney, yet we apprehend that, if the question were raised, the courts would be obliged to say that none but attorneys at law were eligible. As remarked in *State v. Russell,* 83 Wis. 330, 53 N. W. 441, the name of the office implies the qualification. See *People ex rel. Hughes v. May,* 3 Mich. 598. The general proposition that the legislature has no power to prescribe arbitrary tests and qualifications for offices created by the constitution is admitted. But as to offices created by the legislature by statute, which may be abolished at will, no such rule applies. This was distinctly ruled early in the history of this state, and has never since been questioned. *State ex rel. Tesch v. Von Baumbach,* 12 Wis. 310; *State and DeGuenther v. Douglas,* 26 Wis. 428. Counsel for the plaintiff in error is mistaken in saying that the office in question is a constitutional office. It was first created by the legislature in 1861, by ch. 179. Prior to that time the supervision of schools was vested in town superintendents. The legislature had power, under the constitution, to create the office. We know of no restriction against their abolishing it whenever they believe the public interests require.

The right to hold office under our political system is not a natural right, but exists only and by virtue of some law expressly or impliedly creating and conferring it. Mechem, Pub. Off. § 64. It may be controlled by the constitution, but, when that instrument does not prescribe the qualifications, it is the province and the right of the legislature to declare upon

what terms and subject to what conditions the right shall be conferred. Id. § 66. When the constitution has made some provision, but not exclusive ones, the legislature may add such others as are reasonable and proper. *State ex rel. Att'y Gen. v. Covington,* 29 Ohio St. 102; *Darrow v. People,* 8 Colo. 417, 8 Pac. 661. Where there are no limitations prescribed, the right to hold office is usually coextensive with that of suffrage. *State ex rel. Schuet v. Murray,* 28 Wis. 96. But the right to vote and the right to hold office should not be confused. Citizenship, residence, and age constitute the individual a voter, but other qualifications are absolutely essential to the efficient performance of the duties connected with almost every office. In offices created by the legislature, the right of the legislature to demand such additional qualifications as the nature of the particular office may reasonably require follows legitimately from the rule laid down in the *Von Baumbach Case.* No specific provision of the constitution can be pointed to as being breached by this holding. The matter of proper qualification in the person holding the office of county superintendent of schools is too important to allow any doubtful implication of prohibition from the constitution to deny it. The qualifications required are certainly reasonable, and even less than the importance of the office demands.

The language of this statute is that "no person shall be eligible to the office" who does not possess the qualifications mentioned. Confessedly, the plaintiff in error did not possess them. She was therefore ineligible to hold the office or secure its emoluments. As will hereafter be seen, the question of whether the legislature has the power to require any candidate to produce and file a certificate of qualifications for office before his name shall go on the ticket is not necessarily here involved. The judgment of ouster was clearly right, unless, as contended, the judgment declaring her right to have her name placed as a candidate on the official ballot was a bar to this proceeding. The former action was against the county clerk,

whose duty it was to prepare the official ballot. It was based solely upon the ground that secs. 38 and 702a were unconstitutional. The petition for the writ of *mandamus* made no claim that *Mrs. Fordyce* was in fact qualified or eligible for the office. The only issue presented and litigated was whether the legislature might lawfully require candidates for the office of county superintendent of schools to file a certificate showing that they were eligible to office, before their names should appear on the official ballot. Had it been alleged that she was *eligible* for the office, it might well be contended that a judgment in her favor would have established her political status, and have been binding upon the voters of Price county. But no such issue was presented or litigated. The relator in this action was not a party to that proceeding. As a citizen of Price county, at the very farthest, he would only be bound by a judgment which declared *Mrs. Fordyce's* eligibility to the office she sought. No such judgment has been pronounced. The issue here being entirely different, the judgment in the former case cannot be appealed to as a bar to this proceeding. See *Grunert v. Spalding,* 104 Wis. 213, 80 N. W. 589; *Cromwell v. Sac Co.* 94 U. S. 351; *Nesbit v. Riverside Ind. Dist.* 144 U. S. 610, 12 Sup. Ct. 746; *Slater v. Skirving,* 51 Neb. 108, 70 N. W. 493. It would be an anomalous proposition, indeed, to hold that a judgment by a trial court that a certain law was unconstitutional, at the suit of one citizen, should be a bar to a suit by another citizen, where even the same proposition was involved. Much less can we so hold where the issues presented and the parties are different, as is the case in this proceeding.

What we have already said upon the question of change of venue disposes of the merits of the appeal from the order after judgment. If it be conceded that Judge DICK had authority to pass upon the merits of the order calling in Judge HELMS, and the judgment which followed the trial by the lat-

ter, the conclusion would be the same. The order to show cause was properly discharged.

*By the Court.*—The judgment and order attacked are each affirmed.