THE STATE OF DELAWARE, upon the relation of Clarence A. Southerland, Attorney-General, *vs.* BENJAMIN W. JOHNSON.

(*May* 16, 1927.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.
*Clarence A Southerland*, Attorney-General, for relator.
*Josiah Marvel* and *James H. Hughes, Jr.*, for respondent.
Superior Court for New Castle County, March Term, 1927.

PENNEWILL, C. J., delivering the opinion of the Court:

This information, in the nature of a *quo warranto*, was filed against the defendant, Benjamin W. Johnson, for the purpose of determining whether his election at the General Election in November, 1926, to the office of Levy Court Commissioner from the Sixth Levy Court District of New Castle County, was valid. This involves the determination of the question whether the said Benjamin W. Johnson was qualified to be elected to said office and to hold the same.

The information, and affidavits filed in support thereof, set out the following facts:

In May, 1923, Benjamin W. Johnson was duly appointed a Collector of Taxes for Pencader Hundred, New Castle County, gave bond in proper form, which was duly approved by the Levy Court, and performed all the duties of Collector of Taxes for said Hundred from June, 1923, to the end of his term of office.

In June, 1924, the Levy Court of New Castle County duly fixed the county tax rate and delivered to Johnson a warrant for the collection of certain taxes named therein, based upon certain assessments and schedules of property, and Johnson proceeded to collect the greater part of these taxes.

On November 2, 1926, the day of the General Election, and on November 5, 1926, the date of the certification of the election of Benjamin W. Johnson as a Levy Court Commissioner, Johnson had failed to account for certain County and Poor taxes, road taxes, school taxes and dog taxes, aggregating approximately Seven Hundred Dollars ($700.00).

After November 5, 1926, at various times certain of these taxes were paid by Mr. Johnson to the County Treasurer, and finally, on December 7, 1926, before he assumed office as Levy Court Commissioner, but after his election and after the certification of his election, he fully accounted for all of said taxes and settled with the Levy Court.

It appears from two affidavits filed on behalf of the respondent that in order to collect his uncollected taxes, the respondent delivered to John Titus, an investigator appointed by the Levy Court to assist in the prosecution of claims for delinquent taxes in the Court of Common Pleas, a list purporting to contain the names of delinquent taxables; that letters were written to said delinquents and suits were filed "against certain of said delinquents." It further appears that on November 30, 1926, the respondent, Benjamin W. Johnson, was allowed an error by the Levy Court in relation to an over-assessment of certain property in the sum of Eight Thousand Seven Hundred and Fifty Dollars ($8,750.00), and that on November 30, 1926, evidence of this error was presented by the respondent to the Board of Assessment.

Under the foregoing state of facts, the question is presented

whether Mr. Johnson was qualified to be elected to the office of Levy Court Commissioner, in view of the provisions of *Section* 1262 of the *Code*, being *Section* 118 *of Chapter* 45, which reads as follows:

"No collector, during his term of office, nor until he shall have fully accounted for all taxes it was his duty to collect, shall be elected or appointed a Levy Court Commissioner, County Treasurer, Trustee of the Poor, Inspector of a Hundred, Coroner or Sheriff."

As stated by the relator the discussion of this question raises two points:

1. Is the disqualification of the statute applicable to the time of holding the election, or the certification of election, or is it to be construed as applicable to the time of taking and holding office?

2. If the disqualification arising from the statute refers to the time of election, are the facts of this case sufficient to disqualify the respondent?

In considering the first question, it is important to note the pertinent words of the statute:

"No collector, during his terms of office, * * * shall be elected or appointed a Levy Court Commissioner."

The statute does not say that the officer shall not be eligible for office or shall not be capable of holding office, as the statutes of some states provide. And this difference in the language of the law accounts for the most part, for the decisions of the courts in the cases cited by the respondent. The courts have been inclined to sustain an election of the people whenever possible to do so under the law, and have, therefore, construed the words "eligible to office" and other words of similar import, to mean, eligible or qualified, at the time of entering upon the office. If such were the words of our statute the court might not hesitate to hold that the respondent was legally elected and qualified to hold the office to which he was elected, because there was no disqualification at the time of entering on the office. His term of office as collector had then expired, and he had fully accounted for all taxes it was his duty to collect. But the inhibition of the statute is not against the holding of the office, but the election to the office, and we cannot

see how words of such plain and common meaning can be construed to mean anything other than what they clearly import. The disqualification attaches at the time of the election, and it cannot be denied that at that time the disqualification existed because he had not accounted for all the taxes it was his duty to collect.

In view of the plain words of the statute it is not deemed necessary to discuss the cases cited by the respondent. As already observed, they are all easily distinguishable from the instant case because of the differences in the statutory language. But there are authorities that have construed the word "eligible" and other words of like meaning to apply to the election, viz.: *People v. Purdy*, 154 *N. Y.* 439, 48 *N. E.* 821, 61 *Am. St. Rep.* 624; *Searcy v. Grow*, 15 *Cal.* 117; *Taylor v. Sullivan*, 45 *Minn.* 309, 47 *N. W.* 802, 11 *L. R. A.* 272, 22 *Am. St. Rep.* 729; *Roane v. Matthews*, 75 *Miss.* 94, 21 *So.* 665; *State v. Boyd*, 31 *Neb.* 682, 48 *N. W.* 739, 51 *N. W.* 602; *Commonwealth v. Pyle*, 18 *Pa.* 519.

There are perhaps a greater number of cases that have construed the word "eligible" to apply, not to the election, but the capacity for holding the office. According to these authorities, if the disqualification mentioned in the statute is removed or cured before the time for entering upon the office, the election is valid. Some of the cases sustaining this view are: *Smith v. Moore*, 90 *Ind.* 294; *Vogel v. State*, 107 *Ind.* 374, 8 *N. E.* 164; *Brown v. Goben*, 122 *Ind.* 113, 23 *N. E.* 519; *State v. Huegle*, 135 *Iowa* 100, 112 *N. W.* 234; *Privett v. Bickford*, 26 *Kan.* 52, 40 *Am. Rep.* 301; *Demaree v. Scates*, 50 *Kan.* 275, 32 *P.* 1123, 20 *L. R. A.* 97, 34 *Am. St. Rep.* 113; *Bradfield v. Avery*, 16 *Idaho* 769, 102 *P.* 687, 23 *L. R. A.* (*N. S.*) 1228; *People v. Hamilton*, 24 *Ill. App.* 609; *State v. Breuer*, 235 *Mo.* 240, 138 *S. W.* 515.

The authorities which hold that the words, "eligible to the office," or "qualified to hold the office," apply to the election, support the conclusion we have reached and go further than this court is required to go. Those which hold that such words apply to the time of taking office are, as we have said, clearly distinguishable from the instant case because of the difference in the pertinent words of the statute.

In the case of *Privett v. Bickford, supra,* the Supreme Court of Kansas said:

"If our constitution provided that the plaintiff was ineligible to be elected, instead of being ineligible to hold office, the contention of the defendant would be good."

In the case of *Bradfield v. Avery, supra,* it was held that where the "eligibility" is used in connection with an office, and there are no explanatory words indicating that such word is used with reference to the time of the election, it has reference to the qualification to hold the office rather than the qualification to be elected to the office.

There are two cases upon which the respondent seemed to particularly rely at the argument, viz.: *State v. Trumpf,* 50 *Wis.* 103, 5 *N. W.* 876, 6 *N. W.* 512, and *State v. Breuer, supra.* In the first of these cases the question was, whether the disability had been removed before the term of office commenced. One of the judges said he thought it would have been more in accord with principle to have held that one receiving votes for an office should then be eligible, because the distinction taken between eligibility to election to office and eligibility to hold office is too nice to enter into a rule of judicial decision. This case is in that class which hold the "eligibility" applies, not to the time of the election, but to the time of assuming the duties of the office.

The same comment may be made on the case of *State v. Breuer,* for the Missouri constitutional provision (*Article* 2, § 19) was, "that no person who is now or may hereafter become a collector * * * shall be eligible to any office of trust or profit in [this] state." It did not say that no collector could be elected to any office of trust or profit. In that case the Chief Justice stated, that whether the word "eligible" is used in reference to the date of the election or the date of taking possession of the office depends on the context and on the subject.

There has been found but one case that is closely analogous to the present one, viz.: *People v. Clute,* 50 *N. Y.* 451, 10 *Am. Rep.* 508. In that case one of the questions to be decided was, whether Clute was eligible to the office of Superintendent of the poor.

The law (*Laws* 1853, *c.* 80) provided that "no Supervisor of any town * * * shall be elected or appointed to hold the office of Superintendent of the poor." It was contended in that case, as in this one, that the staute referred to the time of assuming office and not to the time of the election. In answer to this the court said:

"We do not so think. The Legislature intended that the same person should not hold the two offices at the same time; and to effect this, it prohibited the election of a supervisor to hold the office of superintendent. It made him ineligible, not merely to holding, but to an appointment or election to hold. The language is not that he shall not hold, but that he shall not be elected or appointed to hold, and operates upon the very first step in the process toward holding, and stops that. He can never hold but by appointment or election; and the act says that he shall not be eligible to that election or appointment. So that he can never begin to hold, and cannot, by resigning the one or accepting the other, bring himself within the reason of the cases cited."

This case decided by the New York Court of Appeals fully supports our conclusion in the present case. The respondent's criticism of the case is that it is rather an old one, and should not be followed today. But we have seen no authority to the contrary based on a similar constitutional or statutory provision.

Both the relator and respondent have taken some pains to show the origin and history of the statute in question, the purpose of the one being, apparently, to show the reason for the law, and of the other to show that the office of Levy Court Commissioner is recognized by the Constitution, and the qualifications for the office being fixed by the Constitution they cannot be added to by the Legislature.

We do not care to speculate upon the reasons that may have prompted the Legislature to enact the statute, and are of the opinion that the history of the law, showing the changes therein since its first enactment, is of very little assistance. We take the statute as it now stands, and basing our decision on its plain language, hold that the disqualification has reference to the time of the election and not to the time of assuming the office.

The respondent contends that the information filed in this case should be dismissed because the statute in question contravenes the Constitution of the state in its attempt to set up qualifications for the office of Levy Court Commissioner. It is argued that where the Constitution has prescribed qualifications for a

public office, the Legislature may not prescribe inconsistent ones even in the case of a statutory office. Certain constitutional provisions referred to show the qualifications that have been prescribed for public office prior to the present Constitution which provides that, "no person shall be elected or appointed to an office within a county who shall not have a right to vote for a representative of the General Assembly, and have been a resident therein one year next before his election or appointment," etc. *Article 3, § 11.*

The respondent reviews at some length the history of the office of Levy Court Commissioner and concludes by saying: "It cannot be said that such office was created by the Legislature of the State because it had been a well-recognized office long prior to the institution of the State Legislature," it being existent even under the Colonial Government. The respondent does not contend that the office of Levy Court Commissioner is a constitutional office, but that it is an office recognized by the Constitution, and one, the qualifications for which have been fixed by the Constitution.

No matter when and how the office was originally created, it is certain that it now exists by virtue of statutory law. This is a necessary conclusion from *Sections* 1013, 1014, etc., of the *Code of* 1915. It is not denied that the office might be abolished by statute.

But we will assume that *Section* 11 of *Article 3 of the Constitution* applies to public offices both constitutional and statutory, and has application, therefore, to the office of Levy Court Commissioner.

The concrete question raised by the respondent in this connection is whether *Section* 11 *of Article 3 of the Constitution*, which prescribes certain qualification for public office shall be construed by implication as a limitation on the power of the Legislature to prescribe other qualifications not inconsistent with the Constitution. Certainly there is no express limitation; does it exist by implication? Are the qualifications prescribed by the Constitution

exclusive of any others the Legislature may see fit to prescribe no matter how wise and reasonable they may be?

We think not. Only four cases are cited by the respondent in support of his contention that the Delaware Statute (*Code*, § 1262) is unconstitutional, viz.: *Thomas v. Owens*, 4 *Md.* 189; *Spruill v. Bateman*, 162 *N. C.* 588, 77 *S. E.* 768, *Ann. Cas.* 1915B, 515; *Dickson v. Strickland*, 114 *Tex.* 176, 265 *S. W.* 1012; *People v. McCormick*, 261 *Ill.* 413, 103 *N. E.* 1053, *Ann. Cas.* 1915A, 338.

The North Carolina case is clearly not in point because the Constitution (*Const. N. C. art.* 6, § 7) provided, that "every voter * * * except as in this article disqualified, shall be eligible to office."

The Texas case holds that the Legislature cannot add to or take from such qualifications as are expressed in the Constitution. It cannot change or vary such qualifications.

The Illinois case, upon which the respondent particularly relies is not analogous to this case before the court upon the facts involved, although certain language in the opinion might be regarded as favorable to the respondent.

The Constitution (*Const. Ill. Art.* 7, § 6) provided that "no person shall be elected or appointed to any office * * * who shall not have resided in this state one year next preceding the election or appointment." The statute involved in that case required five years' residence in the county for a county commissioner, and it was held to be in conflict with the constitutional provision.

The opinion of the court in the Maryland case does not appear to warrant the statement in the syllabus, that where the Constitution prescribes the qualifications for constitutional officers, no other qualifications can be imposed.

It will be observed that the Delaware statute does not prescribe any qualification inconsistent with the constitutional provision, nor any disqualification other than that arising from the incompatability of two offices. And this we think is not inimical to the letter or spirit of the Constitution.

While there may be a slight conflict in the cases, we think the correct rule is stated in *Throop on Public Officers at Section 73*, wherein it is said:

"It is clear that where the Constitution prescribes the qualifications for holding office, any act of the Legislature, contravening directly or indirectly the mandates of the Constitution in that respect, is unconstitutional. * * * The general rule is that the Legislature has full power to prescribe qualifications for holding office; in addition to those prescribed by the Constitution, if any, provided that they are reasonable, and not opposed to the constitutional provisions, or to the spirit of the Constitution."

This rule is supported by many authorities, as appears from notes to 19 *Ann. Cas.* 743, and *Ann. Cas.* 1915A, 343.

The following cases supporting such rule may be particularly mentioned: *State v. Covington*, 29 *Ohio St.* 102; *Darrow v. People*, 8 *Colo.* 420, 8 *P.* 661; *State v. Craig*, 132 *Ind.* 54, 31 *N. E.* 352, 16 *L. R. A.* 688, 32 *Am. St. Rep.* 237; *State v. McAllister*, 38 *W. Va.* 485, 18 *S. E.* 770, 24 *L. R. A.* 343; *Fordyce v. State*, 115 *Wis.* 608, 92 *N. W.* 430; *State v. Goldthait*, 172 *Ind.* 210, 87 *N. E.* 133, 19 *Ann. Cas.* 737.

We think the rule as stated by Throop is not only supported by reason and the weight of authority, but is the only safe and reasonable one to follow. The adoption of the contrary rule, the one contended for by the respondent, would seriously affect many statutes in this state whose validity have never been questioned.

There remains to be considered the point made by the respondent, it being the second point made by the relator, that said *Section* 1262 *of the Code* does not exact the payment of taxes as a condition precedent to eligibility for the office of Levy Court Commissioner, but only an accounting for taxes. A distinction is here sought to be made between the payment of taxes and the accounting for taxes. We think the distinction is unwarranted and unsound. The attempted distinction is based on the admitted fact that in 1925 the respondent turned over to an officer created by the Levy Court to assist in the collection of taxes, a list of the delinquent tax payers in his District, showing the amount due from each taxable. This he claims was an accounting within the meaning of the statute.

The condition of the collector's bond under *Code*, § 1146, requires the officer to collect all taxes whatever which shall be committed to him for collection, and to pay the amount of all such taxes, excepting only so far as allowances shall be made to him for deliquencies, in the manner and within the times prescribed by law. *Code*, § 1182, provides that such collector shall, at the end of two years from the date of his duplicate, deliver such duplicate to the Levy Court Commissioners "and shall be liable severally on his respective official bond for all unpaid taxes thereon."

From these pertinent statutory provisions we are forced to the conclusion that it is the duty of the collector to collect and account for all the taxes listed on his duplicate except those allowed as errors or delinquencies by the Levy Court. Until the taxes committed to him for collection have been paid to the persons authorized by law to receive them, or allowed as delinquencies, the collector has not accounted for them within the meaning of the law, and he is liable therefor on his bond.

It is shown, and not denied, that at the time of his election as Levy Court Commissioner the respondent, as collector, had failed to account for certain taxes aggregating about seven hundred dollars which it was his duty to collect and account for, and that he had not been allowed for the same by the Levy Court as delinquencies or otherwise. We are, therefore, constrained to hold that the respondent was, at the time of his election to the office of Levy Court Commissioner in November, 1926, ineligible to the election, and consequently ineligible to hold the office to which he was elected. Under the law we cannot hold otherwise.

The motion of the respondent to dismiss the information filed by the relator is refused.