No. 2398.

## S. M. WILLIAMS *v.* THE STATE, EX REL E. H. VASMER.

1. QUO WARRANTO.—A proceeding in the name of the State, and in the nature of quo warranto, upon the relation of one entitled to the office of district clerk, may be maintained by him to oust an intruder who has obtained possession and assumes to exercise the functions of such office.

2. ELECTION—BALLOT—STATUTE CONSTRUED.—It must be held in favor of the right of suffrage, that the statute regulating the character of ballots that may be used at an election should be strictly construed and words printed on the face of a ticket, other than those allowed by the terms of the law, will not vitiate it if they do not amount to a device or mark within the meaning of the statute. The printing of the name of the political party to which the candidate belongs will not vitiate the ticket, Nor is it vitiated by the fact that at a general election the names of more than one political party are found on the ticket above the names of the candidates who belong, respectively, to such parties.

3. SAME—RETURNS OF ELECTION.—The original returns of election are admissible. in a case of contested election, as prima facie evidence of the truth of what they contain, when produced from the custody of the county clerk, in whose office they were deposited by the managers of the election.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*Hutcheson, Carrington & Sears,* for appellant: The court erred in admitting in evidence and counting for the relator Vasmer, over the objections of the defendant, the eighty-five ballots cast for him at the fifth ward precinct, because they were made and printed in direct violation of the statutes of this State, in that, at the head of the ballot or ticket, was printed in bold type the words "Democratic Ticket," to indicate the name of the political party whose candidates were on the ticket, followed by the names of several candidates for State offices; while, about the center of the ticket, was printed, in smaller type, the words "People's Ticket," followed by names of candidates for county offices. (Laws Reg. Session, 1879, pp. 119, 120; Owens v. The State, 64 Texas, 510; Shields v. McGregor, 4 S. W. Rep., 266, from Sup. Ct. Mo., May, 1887.)

The original minutes of the commissioners court, or election

record, was a volume or record belonging to another court, and could not legally be introduced in evidence itself in the district court, over the objection of the defendant. (Laws of 1883, p. 51, art. 1705; 1 Greenl. on Ev., par. 502.)

*C. Anson Jones, Frank Burke* and *Brady & Ring,* for appellee: Both the minutes from the election record book and the original returns were prima facie evidence of the result of the election. (Owens v. State, 64 Texas, 501; State, ex rel., v. Owens, 63 Texas, 261; McCrary on Elections, secs. 363–365, 370.)

The court did not err in admitting in evidence and counting for the relator Vasmer the eighty-five ballots cast for him at the fifth ward voting precinct. (State, ex rel. Millican, v. Phillips, 63 Texas, 390; Owens v. State, 64 Texas, 501; Shields v. McGregor, 4 S. W. Rep., 266; Fowler v. State, ex rel. George, 3 S. W. Rep., 255; McCrary on Elections, secs. 401–405.)

WILLIE, CHIEF JUSTICE. This was an information in the nature of a quo warranto instituted by the State upon the relation of E. H. Vasmer, its object being to oust the appellant from the office of district clerk of Harris county, and to place the re· lator therein. That this is the appropriate proceeding in such a case has been settled by this court; and, like any other proceeding in the nature of a quo warranto, it is governed in every respect by the statute on that subject. It is, therefore, properly return · able to the Supreme Court now in session at Tyler, having been tried in the court below on the seventeenth of November, 1887. (State v. Owens, 63 Texas, 261; Owens v. State, 64 Texas, 500: Fowler v. State, 68 Texas, 30.)

The appellant and the relator were opposing candidates for the office of district clerk of Harris county at an election held on the second day of November, 1886, and according to the result as announced by the officers who counted the returns of the votes cast in the election, the appellant received three thousand and seventy-eight and the relator three thousand and seventy-six votes, whereupon the certificate of election was given to the appellant, and he qualified, gave bond, and has since been in possession of the office. It was, however, alleged in the information that at precinct No. 5 of Harris county eighty-six legal votes cast for the relator were not counted for him by the officers in charge of the election, and did not enter into the general estimate of the vote of the county. It was further alleged that the box of precinct

No. 22, at which the relator received five majority, did not enter into said estimate. The relator also impeached the returns of precincts Nos. 3 and 4, claiming that he received at these precincts three hundred votes more than the count allowed him.

The appellant pleaded a general denial; denied the statements of the information as to the count in the third and fourth wards, and asserted that the eighty-six ballots claimed to have been rejected in the fifth precinct were illegal. He also pleaded that there were one hundred or more illegal ballots cast for the relator at said election by persons who did not live in Harris county and specified by name nine or ten of such ballots. The case was tried by the court without a jury and a judgment rendered ousting the appellant from the office and placing the defendant therein. From this judgment Williams has appealed to this court.

When the case was called for trial the appellant moved for a continuance, his affidavit being in compliance with the statute regulating motions for a second continuance, on account of the absence of material witnesses. The affidavit stated that the affiant expected to prove by the absent witnesses that eight illegal voters, giving their names, had cast their ballots for the relator. It further stated that he expected to prove by one of the absent witnesses that the character of tickets rejected in the fifth precinct were gotten up to deceive voters into believing that it was a democratic ticket, and that it did deceive many of the ignorant and heedless voters, and that the witness saw a colored man vote one of the tickets, believing that he was voting the opposite ticket, which was the democratic ticket; and that the witness procured the vote of a colored man for Vasmer who desired to vote for the appellant by exhibiting to him at the head of said ticket the words "Democratic Ticket;" and that said voter voted the said ballot, believing that he had voted for Williams. In answer to this motion the appellee admitted all the facts stated in it except that the character of ticket rejected in the fifth precinct was gotten up to deceive voters into believing that it was a democratic ticket, and that it did deceive many of the ignorant and heedless voters; and that the witness saw a colored man vote one of those tickets, believing that he was voting the democratic ticket. The court thereupon overruled the motion to continue, and a bill of exceptions to the ruling was saved and error is assigned thereon.

Upon the trial the relator, after properly identifying the

eighty-six ballots cast in his favor at precinct 6, which were rejected by the managers of the election, offered them in evidence. They were objected to by the appellant because the words "Democratic Ticket" were printed in bold type at the head of these tickets to indicate the name of the polical party whose candidates were on the ticket, while about its center were printed in smaller type the words "People's Ticket," followed by names of candidates for county officers. It was claimed that this was in violation of the statute which required that the ballot, to be a legal one, must contain the name of the one political party whose candidates are on the ticket, and was a device and mark on the ticket tending to deceive and mislead voters, and especially marking it in a way prohibited by statute. The objection was overruled and the ticket admitted. Upon the correctness of this ruling depends the question as to whether the action of the court upon the motion to continue can be sustained, and the two rulings will therefore be considered together.

Our statute provides that "all ballots shall be written or printed on plain white paper without any picture, sign, vignette, device or stamp mark, except the writing or printing in black ink or black pencil, of the names of the candidates and the several offices to be filled, and except the name of the political party whose candidates are on the ticket." It then provides that tickets not in conformity with these and others of its requirement shall not be counted. This provision has twice undergone adjudication in this court. In one case the device claimed was the peculiar shape given to the ticket, by which it could be distinguished from all others. It was then said that the exceptions which exclude the ballot must be restricted rather than extended, and that it must be admitted if the spirit and intention of the law is not violated, though a literal construction would vitiate it, and that the will of the people as expressed at the ballot box must be respected and the result must not be set aside except for causes plainly within the purview of the law. We held in that case that the statute not having prescribed the shape of the ballot, the fact that these were not in the usual shape did not render them illegal. (State v. Phillips, 63 Texas, 390.)

In the other case, the words "election ticket" were printed at the head of the ballot; and the names of the candidates for President and Vice President, though not voted for, were placed

on the ticket; as also the counties where the electors resided. Then it was again held that, unless within the letter of the prohibition, the ticket must be counted. That the printed words were not, properly speaking, a device. The statute intended to secure the secrecy of the ballot, and to exclude from the voter's ticket every mark by which it could be distinguished from others, and we would not extend the meaning of the word *device* beyond its literal signification; and further, that it would be within the strict letter of the law to place the words "Democratic ticket" or "Republican ticket" upon the ballots, and the mere change of one word in the heading could not be in violation of its provisions. (Owens v. State, 64 Texas, 500.) Thus it will be seen that, although the statute required that nothing but the names of the candidates and the several offices to be filled, and the name of the party to which the candidates belonged, should appear on the ticket, yet, in favor of the right of suffrage and the expressed will of the voter, we held the statute to a strict construction, and that words printed upon the face of the ticket, other than those allowed by the terms of the law, would not vitiate it if they did not amount to a device or mark within the meaning of the statute. In the case in hand, there is nothing upon the rejected tickets except what is specially allowed by law. They come within its very letter. The names of the candidates and the offices to be filled, and the name of the political party to which they belong, are all that is printed upon them. The statute says this may be done. For us to say that it shall not, is not only to give a liberal construction against the voter, but to decide in the teeth of plain provisions of law not capable of being misconstrued.

The statute does not say that the ticket shall in its entirety be the ticket of one party alone; that the name of no person shall appear upon it who does not belong to the political party designated upon the ballot. It leaves every voter free to support the candidates of his choice, though some may belong to one party and some to another. The name of the party is not required to appear at the head of the ticket, and the words "People's party" near the center of those under decision is as legally placed there as are the words "Democratic ticket" at its head.

As there is nothing in the letter of the law to forbid the use of just such tickets as the eighty-five cast for the relator at box six, upon what construction of its reason and intent should they be rejected, admitting that we can resort to these in such a case to

restrict the rights of a voter, and destroy his ballot? It is urged that such tickets tend to deceive the ignorant and unwary and entrap them into voting against the candidates of their choice; that such a person wishing to vote the democratic ticket, for both State and county offices, seeing the words "Democratic ticket" at the head of these would be led to believe that it contained the name of both the State and county nominees of that party. The law presumes that every man will read over his ticket before he deposits it, or have it read to him by somebody else. If he is able to read he is as capable of knowing what is contained in the ticket as the person who printed or furnished it to him. No one can claim to be deceived by another as to the contents of a paper which he is just as capable of reading and understanding, and has the same opportunity of examining as has the party charged with committing the fraud. If the voter can not read he can not be entrapped by the heading of the ticket, as he can comprehend that no more than he can the rest of its contents. Had these tickets omitted the words "People's ticket" they would have been more calculated to deceive than they were with these words inserted. These words at the head of the county ticket put the voter upon notice of the fact that if he cast the ballot he would vote against the democratic party as to county officers. We think the tickets not calculated to deceive, and not being prohibited by law, the court below properly counted them for the relator. (See Shields v. McGregor, 4 S. W. Rep., 266.)

What we have said affirms the ruling below upon the motion to continue. If the tickets were not calculated to deceive, or defraud the voter out of his choice in the election, it made no difference that they were intended to have that effect. It was not their reasonable effect. They were gotten up in exact accordance with law, and that is all that is required. If by pursuing the requirements of the statute a voter is intended to be entrapped, and is actually entrapped, it is the fault of the law, which is perverted to an improper use. It should certainly not deprive a party of an office who has received enough votes to elect him without counting those thus obtained through fraud. The affidavit did not pretend that the votes thus obtained were sufficient in number to defeat the relator, if those fairly voted gave him a majority.

As to the objection to receiving the book of the commissioners court in evidence, it has been held by this court that the books

of another court may be received, though the record of deeds can not, as original evidence. The latter are no more than copies, and the originals must be inaccessible before copies can be admitted. (Houze v. Houze, 16 Texas, 602.) But, be this as it may, the appellant was not damaged by their admission. The facts proved by them were fully established by the original returns. These were admissible as prima facie evidence. The law required them to be deposited with the county clerk by the managers of the election. They were so deposited, and were produced by him from his custody. They were the acts of officers of the law appointed to make them out and return them, and the presumption was that they had performed their duty. (1 Greenl. on Ev., sec. 485.) If the returns were incorrect, the appellant should have shown this by the ballot boxes. They were not even impeached by him, but, on the contrary, he declared that he had received by these returns three thousand and seventy-eight votes, and the relator three thousand and seventy-six, which was the fact the relator sought to prove by the book and returns. Moreover, had this proof been left out, the returns legally established would have given the relator a majority of votes after deducting such as were illegally cast for him, and entitled him to the office. The official count showing that the relator received three thousand and seventy-six votes, and the respondent three thousand and seventy-eight, and the relator having shown that he was entitled to eighty-six votes not counted for him, and not more than eight illegal votes having been cast in his favor, it was fully established that the relator was elected by seventy-six votes, and entitled to the office. It is, therefore, not necessary to inquire whether he was entitled to have the vote of precinct number twenty-two counted by the court. There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered December 25, 1887.