### B. N. MADDOX v. O. L. YORK.

#### Decided November 18, 1899.

**1. Office of Sheriff—Vacancy by Death of Sheriff-Elect.**

The death of a sheriff-elect before receiving notice of his election, but after the term of his predecessor had expired, creates a vacancy which the commissioners court is authorized by section 23, article 5, of the Constitution to fill by appointment until the next general election.

**2. Office—Vacancy.**

The death of one who has been elected and is entitled to hold an office creates a vacancy therein, and such vacancy may be constructive as well as actual.

**3. Same—Surrender of Office to Appointee.**

Where plaintiff was sheriff, and at the expiration of his term voluntarily turned over the office to one appointed sheriff by the commissioners court, he will be treated as having abandoned and surrendered the office. HUNTER, Associate Justice, dissenting.

APPEAL from Palo Pinto. Tried below before Hon. J. S. STRAUGHAN.

*Albert Stevenson* and *W. P. Gibbs*, for appellant.

*William Veale, J. F. Daniels, H. E. Bradford,* and *Greene & Stewart,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The title to the office of sheriff of Palo Pinto County is involved in this controversy. At the general election held in 1896, O. L. York was elected to that office, and, after taking the oath and giving the bond prescribed by law, entered upon the discharge of its duties November 13, 1896. At the next general election, held November 8, 1898, York was again a candidate for the office, but George M. Lasater was chosen to succeed him by a majority of 44 votes. On the 13th day of November, 1898, and before the votes

had been counted, Lasater received by accident a fatal injury, of which, without ever regaining consciousness, he died on November 15, 1898. On that day, but before his death, the Commissioners Court of Palo Pinto County concluded the canvass of the returns of the election, and declared the result as above indicated; the county judge issuing to Lasater a certificate of election, which was deposited in the postoffice of Palo Pinto town about 6 o'clock p. m., addressed to him at Whitt, Parker County, Texas, which was his former postoffice address, his address at that time being Oran, Palo Pinto County. But, as he died about 9 o'clock that night, he would not have received it, had it been properly addressed, to say nothing of his unconsciousness, which was complete and continuous from the time of the injury. On the 8th day of December, 1898, the Commissioners Court, having declared the office vacant the day before, appointed B. N. Maddox to fill the vacancy so created, if vacancy there was. On the 14th day of December, 1898, Maddox, after giving the bond and taking the oath prescribed by law, took possession of the office under this appointment, and held it until ousted by the judgment from which this appeal is taken.

Unless York, notwithstanding his unsuccessful candidacy, was entitled to hold the term of office to which Lasater was duly elected (that is, unless he was entitled to two terms by virtue of an election to one only), that judgment was erroneous, and must be reversed. A result so at variance with the whole tenor of our organic law and political history is itself suggestive of doubt as to the correctness of the construction producing it. As was said by Judge Moore in Wright v. Adams, 45 Texas, 134, "It is believed, moreover, to be a sound rule of construction, which holds, when the duration or term of an office which is filled by popular election is a question of doubt or uncertainty, that the interpretation is to be followed which limits it to the shortest time, and returns to the people at the earliest period the power and authority to refill it." Turning to the Constitution, besides the general provision that "the duration of all offices not fixed by this Constitution shall never exceed two years," and that "all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified" (article 16, sections 17, 30), we find the following: "There shall be elected by the qualified voters of each county a sheriff, who shall hold his office for the term of two years, * * * and vacancies in whose office shall be filled by the commissioners court until the next general election for county or State officers." Art. 5, sec. 23. This article declares, in effect, that the person elected sheriff by the qualified voters of the county is entitled to "his office" for the term of two years (that is, that such term or tenure is his), and also that vacancies therein shall be filled by the commissioners court. It therefore leaves little room for doubt, we think, that the Commissioners Court of Palo Pinto County exercised a constitutional power in appointing Maddox to fill the term of office to which Lasater had been elected, and which was left vacant by his death. This conclusion accords with the views expressed by our .

Supreme Court in construing these and similar constitutional and statutory provisions. State v. Cocke, 54 Texas, 482; State v. Catlin, 84 Texas, 48.

Much stress is laid by counsel for appellant upon their construction of article 4894 of the Revised Statutes, which declares that the sheriff's office shall be deemed vacant if the sheriff-elect fails to qualify within twenty days after notice of his election. But this article does not undertake to provide for all cases of vacancy, and does not purport to apply to a case like the one at bar, though the language may be broad enough to cover it. It certainly should not be so construed as to narrow the scope of the constitutional provisions above quoted. Besides, article 4891, in the same chapter, which, however, is but a re-enactment of the Constitution, is more comprehensive.

That the death of one entitled to hold an office for a given term creates a vacancy therein, seems to be a common-sense view of the matter, and would be readily accepted by us, but for a line of decisions which appear to be more technical than sound. Conspicuous among these is the Indiana case of Kimberlin v. State, 29 Northeastern Reporter, 773, so much relied on by appellee's counsel, and which doubtless had controlling influence with the learned judge who tried this case. See, also, cases collated in notes to this case in 14 L. R. A., 858, and particularly State v. Hunt, 54 N. H., 431, and State v. Hopkins, 10 Ohio St., 509, afterwards construed in State v. Dahl (Ohio Sup.), 45 N. E. Rep., 56. While the Indiana case seems at variance with the views we entertain the constitutional provisions there construed were different from those above quoted from our Constitution, in that they contained a clause of construction which expressly provided that a provision in the Constitution or laws of that State that an officer should hold his office for a given term should be "construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified." Distinctive force was ascribed in the opinion to the word "elected" in the sentence just quoted from the Indiana Constitution, which word, as before seen, does not appear in that connection in our Constitution; and stress was also laid upon the fact that the holding-over feature was by the language so quoted expressly made a part of the official term, while in our Constitution it seems to have been segregated from the regular term of office, and treated as a mere holding pro tempore, to subserve public convenience. State v. Cocke and State v. Catlin, supra. The question to be determined in all the cases is, what is meant by the term "vacancy in office," as used in the Constitution or statute being construed? and it should be borne in mind that such vacancy may be constructive as well as actual. Mechem Pub. Off., sec. 127.

It is plausibly argued that, as Lasater was never in the office of sheriff, his death created no vacancy. Literally speaking, that is true; but literalism is frequently condemned by sound rules of construction. If he had lived and failed to qualify within the prescribed time, there would, admittedly, have been a vacancy; and yet in that case he would never

have been in the office, which shows the fallacy of the argument founded on the idea of a literal vacancy. But as the sheriff-elect was entitled, upon qualifying, to hold the office for a term of two years, whatever prevented him from doing so created a constructive or virtual vacancy in office for his entire term, which was as effectual, under the Constitution, as a literal vacancy would have been, had he died after qualifying and taking possession of the office. Such, at any rate, is the construction that we think our Constitution should receive. It was evidently the intention of the framers of that instrument that no county officer should hold more than one term of two years without re-election or appointment. Only the failure to elect or appoint a successor would entitle the incumbent to so remain in office, in order to perform its duties as enjoined in the Constitution.

We are also inclined to the opinion that the judgment should be reversed upon the ground that the agreed statement of facts shows that in aiding appellant to secure the appointment from the Commissioners Court, and in turning the office over to him voluntarily, or at least without protest, the appellee should be treated as having surrendered and abandoned the office. This view seems to be sustained by the authorities. State v. Moores (Neb.), 72 N. W. Rep., 1056; State v. Boyd (Neb.), 51 N. W. Rep., 964; State v. Peelle, 124 Ind., 515. But whether judgment could be here rendered upon this ground we need not determine, in view of the conclusion already reached upon the main question. The judgment will therefore be reversed, and here rendered for appellant.

*Reversed and rendered.*

DISSENTING OPINION.

HUNTER, ASSOCIATE JUSTICE.—I can not agree with my brothers in their disposition of this case. I am of opinion that no vacancy existed in the office of sheriff at the time the Commissioners Court attempted to appoint Mr. Maddox sheriff. It seems clear to me that the county commissioners have no power to declare a vacancy, unless such power is expressly given them by the statute; and, this being an extraordinary power, the right to exercise it ought to be clear. They can not deprive the hold-over incumbent of his right under the Constitution and statute to perform the duties and receive the fees and perquisites thereof, except by a strict conformity to the statute giving them such power. Our statute confers the power on such court to appoint a sheriff when a vacancy occurs. 2 Sayles' Civ. Stats., 1897, art. 4891. It has been held, almost without variation, that in States where the Constitution or statute provides that the officer-elect shall hold the office for the term named, and shall continue to perform the duties thereof until his successor is duly selected and qualified, no vacancy exists by reason of the death of the newly-elected officer before he qualifies.

Our statute declares that "when any person elected sheriff shall neg-

lect, refuse, or fail from any cause whatever to give bond and take the oath of office within twenty days after notice of his election, the office shall be deemed vacant, and the county commissioners court shall proceed to appoint a sheriff to fill the vacancy, who shall hold his office for the unexpired term." 2 Sayles Civ. Stats., 1897, art. 4894. Of course this article does not attempt to declare what shall be deemed a vacancy, except in the one instance, but the Commissioners Court have evidently acted in this instance by virtue of this article. It is clear to my mind that under this article a sheriff-elect must not be dead at the time he is elected, nor when he is declared elected, nor when notice of his election is given, but must be alive and eligible to receive and hold the office, and not under any legal disability which would render him incapable of receiving, qualifying, and executing the functions of the office, and of receiving notice of his election.

In this case the facts, as agreed upon show that on the 13th day of November, 1898, one day before the day fixed by law for counting the vote and declaring the result of the election, Mr. Lasater received a fatal injury, which, from the time it was received until the time of his death, on the evening of the 15th of the same month, rendered him "wholly unconscious; he never spoke or moved and apparently never recognized any person." While in this condition the returns of the election were canvassed, and he was declared elected, and his certificate of election issued and mailed to him. Now, I think he was, to all intents and purposes, civiliter mortuus. He could not receive a notice of his election. He could not execute a bond or take the oath of office, because he was incapable of binding himself by a contract or by an oath or affirmation. He was incapable of exercising the civil or political rights of a citizen, and could not vote or hold an office. He could not have made a valid will. He was of unsound mind,—in contemplation of law, a lunatic,—and, under our Constitution and statutes, could neither vote nor hold office (Constitution, article 6, section 1), because, under our system of government, as a rule, one who is not qualified to vote for sheriff is also ineligible to hold that office; and this, it has been said, is the "common political law of our country." Throop, Pub. Off., sec. 72; Mechem, Pub. Off., secs. 67, 68. He died before his certificate of election was delivered to him. He was incapable, in law, of receiving it, and until he received it he was not notified of his election; and until he had been notified for twenty days, and failed to qualify, the power in the Commissioners Court to declare a vacancy and make an appointment did not exist. Flatan v. State, 56 Texas, 103. Our Constitution provides, in effect, that the term of the office of sheriff shall not exceed two years, but that all officers shall continue to perform the duties of their respective offices until a successor is duly qualified. Const. 1895, art. 16, secs. 17, 30; Id., art. 5, sec. 23. The statute (article 489) provides, "There shall be elected by the qualified voters of each county one sheriff, who shall hold his office for two years, and until his successor shall be elected and qualified."

These provisions of the Constitution and statute gave Mr. York, in my opinion, the right, and it was his duty, to hold the office until the next regular election, and even for life, unless and until some eligible person is duly declared elected, and afterwards duly qualifies by giving the bond and taking the oath required by law, or fails to qualify for twenty days after receiving his certificate of election, in which latter event the Commissioners Court would have the right to deem and declare the office vacant and appoint a successor. Until one of these things occurs, Mr. York, having been elected by the people of Palo Pinto County to serve them as sheriff, is entitled to hold the office, and in fact it is his duty to do so, until some one demands it of him who is legally entitled to receive it, and to whom, for the same reason, he can lawfully deliver it. Our system of government is an elective one, and our laws contemplate that an officer elected by the people shall not only hold the office for two years, but until we elect some other eligible citizen to fill his place; and the extraordinary power of appointing such officers who have not been chosen by the people, to displace a citizen who has, ought not to be extended beyond what a strict construction of the act would clearly warrant. The right to declare an office vacant which has been filled by an election of the people, without some malfeasance or misfeasance in office committed by the holder thereof, and of placing a citizen therein who has not been chosen by the people, is, to my mind, in a democratic government, an extraordinary power, and ought not to be exercised except in cases where the statute plainly gives the right. Kimberlin v. State (Ind. Sup.), 29 N. E. Rep., 773, 14 L. R. A. 858, and notes; People v. Tilton, 37 Cal., 621; People v. Whitman, 10 Cal., 49; Com. v. Hanley, 9 Pa. St., 513; 6 Am. and Eng. Enc. of Law, pp. 432, 433, and notes; State v. Hunt, 54 N. H., 431; State v. Hopkins, 10 Ohio St., 509; State v. Dahl (Ohio Sup.), 45 N. E. Rep., 56.

In People v. Tilton, supra, Chief Justice Sawyer, in delivering the opinion of the Supreme Court of California, says: "It was manifestly the intention of the Constitution that the Governor should appoint only where there is no party authorized by law to discharge the duties of the office. The object was to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office. When there is a party expressly authorized by law to discharge those duties temporarily, till the power upon whom the duty of election or appointment is devolved can regularly act, there is no occasion for calling into exercise this extraordinary power vested in the Governor to make merely temporary appointment. There is no good reason for appointing a party to temporarily discharge the duties of an office, when there is already a party expressly authorized by the Constitution or laws to temporarily discharge those duties. The very reason upon which the power is vested fails, and the case provided for has not arisen."

I do not think that Mr. York's conduct in aiding Maddox to get the appointment from the Commissioners Court and afterwards surrender-

ing the office to him without protest, amounted to a resignation of the office, and acceptance by the Commissioners Court, so as to estop him from asserting his right to it in this suit. Nor was it such an abandonment of the office as would deprive him of the right to regain it. It seems that he did not know what his legal rights were under the circumstances, which ought not to be a matter of surprise to this court, in view of our differences on the same question; but it is manifest he did not willingly yield it to Mr. Maddox, for he began a contest of some character for it immediately, and then instituted this suit. It certainly does not appear that he intended to abandon it. Honey v. Graham, 39 Texas, 1. But I am of opinion that he could not surrender or abandon the office to a person who had not been legally appointed to receive it, and hence I think he must be considered now the legal sheriff of Palo Pinto County; his tenure of office resting upon his constitutional right to hold over until a successor is duly qualified. As tending to support this view of the case I cite from appellee's brief the following authorities: Turnipseed v. Hudson, 50 Miss., 448, 449; 1 Am. and Eng. Enc. of Law, 1 ed., p. 3, sec. 3; State v. Seay, 64 Mo., 89; Honey v. Graham, 39 Texas, 1; Page v. Hardin, 8 B. Mon., 648; State v. Pritchard, 36 N. J. Law, 117; Cronin v. Stoddard, 97 N. Y., 271. For the reason given, I think the judgment in this case ought to be affirmed.

Upon certificate of dissent in this case covering the points raised in the dissenting opinion above, the Supreme Court sustained the majority opinion. See 93 Texas.