## DENISON v. STATE.

No. 7981.

Court of Civil Appeals of Texas. Austin.

May 29, 1933.

Judge Ocie Speer, of Austin, and Lon Curtis, of Belton, for appellant.

James V. Allred, Atty. Gen., and F. O. McKinsey and Homer C. De Wolfe, Asst. Attys. Gen., for appellee.

BAUGH, Justice.

James V. Allred, as Attorney General, brought this suit on behalf of the state, in the nature of a quo warranto, against Frank L. Denison and others to cancel as void a commission issued by the Governor to said Denison as chairman of the state highway commission, and to oust him from said office on the ground that he was unlawfully attempting to exercise the duties and prerogatives thereof. Trial was to the court without a jury, at the conclusion of which the trial court granted the relief prayed for, and entered judgment accordingly, from which Denison has appealed.

The case arose under the following facts and circumstances:

The term of office of Hon. Cone Johnson, chairman of the state highway commission, expired on February 15, 1933. The Governor on February 1, 1933, the Legislature being then in session, nominated Hon. F. L. Denison as successor to Johnson, and sent his name to the Senate for confirmation as such appointee. The Senate considered said nomination in executive session on February 8, 1933, and on the same day, as directed by the Senate, Bob Barker, Secretary of the Senate, officially notified the Governor in writing that the Senate refused to confirm the appointment of Denison. Thereafter the Governor again submitted to the Senate the name of Denison with request that he be confirmed as chairman of the state highway commission, and after a further consideration of such nomination in executive session on February 23, 1933, the Senate again through its secretary informed the Governor in writing that it had refused confirmation. On the same day the Governor requested the Senate in writing to give the executive the vote of the Senate in such executive session, i. e. how many senators had voted for and how many against confirmation of Denison. This the Senate declined to do. On the following day, February 24, the Governor caused to be issued to Denison a duly authenticated commission as chairman of the state highway commission, and on the same day Denison took the oath of office, filed his official bond, and advised the state comptroller and the state treasurer not to issue nor pay any further warrants against the highway department funds unless same bore his approval.

The foregoing facts are uncontroverted and are substantially admitted in appellant's answer. Appellant Denison in his answer made specific denial of certain other allegations of fact as to interference, etc., with the functioning of the highway commission; alleged that he was legally confirmed in that a majority of Senators voting in said executive sessions voted to confirm his nomination; that his commission was duly issued, valid, and binding; and that he was entitled to discharge the duties and franchises of said office. He further denied that the court had any jurisdiction of this controversy, on the ground that it was and is a matter resting wholly in the power of the executive department to determine under section 1 of article 2 of the Constitution of Texas; that it presented no justiciable fact for determination; and that there being no other claimant to the office, neither the state nor the Attorney General is authorized by law to bring any such suit. He answered further that this controversy presents purely a political mat-

ter with which the courts have no concern, and that the relief sought should therefore be denied.

Appellant's first contention is that the courts are without authority to decide the issues presented because to do so would be a judicial encroachment upon the executive department of the government in violation of article 2, § 1, of the Constitution, dividing the government of the state into three distinct departments, and inhibiting the personnel of one department from exercising any power properly attached to either of the others. After citing and quoting from numerous authorities discussing the matter of encroachment by one department of the government upon the duties and functions of another, appellant makes in his brief the following résumé of his contention:

"The Governor, under our constitutional scheme of separate magistracies, has the exclusive power to appoint Appellant to the office of Highway Commissioner, and incidentally to interpret the Constitution and statutes governing such matters. She has the exclusive incidental power to determine every fact calling into existence her right to exercise this power of magistracy; such, is a purely governmental power and function as to which neither the legislature nor the courts have any concern or responsibility. No court can interfere to prevent the appointment, nor can it review or otherwise frustrate the executive act, unless and until some person asserts a right or defense growing out of the act, in a justiciable matter before the court.

"The present proceeding presents no such exception. The matter presented in the so called quo warranto proceeding pertains solely to a purely governmental matter belonging exclusively to the executive. It does not present a suit, plea, complaint or action of any character invoking juristic action. There is no claimant to the office which Appellant holds; there is no contender for the emoluments of the office. No person is asserting a right that is in any wise involved or threatened by his continued tenure. There is no case, or suit, for the court to busy itself with."

This contention is not sustained. It is long since well settled that one department of the government cannot interfere with the duties and functions delegated by the Constitution to the other departments of government. But this does not mean that each department is the exclusive and final judge of whether the acts performed by it are authorized by the Constitution. The determination of that question is essentially and fundamentally the province of the courts; and it devolves upon the judiciary "to determine whether the acts of the other two departments are in harmony with the fundamental law." 6 R. C. L. § 68, p. 71; 12 C. J. § 393, p. 895; 9 Tex. Jur. § 42, p. 459. While the other departments of the government in the exercise of their duties must ordinarily judge of the Constitution for themselves; "the judiciary speaks last upon the subject; and when it has once spoken, if the acts of the other two departments be unauthorized or despotic, in violation of the constitution or the vested rights of the citizen, they cease to be operative or binding." 6 R. C. L. p. 71; Id., p. 151. In harmony with this fundamental rule and in support of it are the following Texas cases: Houston T. & B. Ry. Co. v. Randolph, 24 Tex. 333; Honey v. Graham, 39 Tex. 1; Ex parte Rice, 72 Tex. Cr. R. 587, 162 S. W. 891, 901.

It is elementary, of course, that the courts cannot compel nor restrain action on the part of either the executive or the Legislature in any matter involving the exercise of their discretion; nor can they interfere in any manner with the exercise by these departments of such discretion nor with the discharge within the scope of their authority of any duty delegated to them by the Constitution. But when they have acted, and their acts are called in question as being in contravention of the Constitution, it is the function and duty of the courts to decide that question. This power is not an assumed prerogative, nor any assertion of a superiority of the courts over the other departments of government, but rather a discharge of the duties imposed upon the judiciary by the Constitution itself, under the general scheme of checks and balances upon which our constitutional system of government was conceived and founded.

We think the controversy herein made clearly presents a justiciable matter. The right of appellant to the office he claims, under the facts stated, the law creating the office, and the Constitution of the state are directly called in question. Nor was it necessary that there be some other claimant to the office at whose instance such suit must be filed. While suits in the nature of quo warranto to try rights to the possession of an office are usually brought by the state at the instance of some interested claimant, obviously under article 6253, R. S., such method of bringing such suits is not exclusive. If it were, there could be no relief under this statute against one usurping, intruding himself into, or unlawfully holding an office made vacant by death of the lawful incumbent, or by his abandonment or refusal to serve. The state itself is interested in seeing to it that its offices, of which the one here in controversy has become one of the most important, are held and executed by those lawfully entitled to do so. The statutes controlling such proceedings (articles 6253–6258) clearly disclose such purpose, and even where such suit is instituted at the instance of some interested individual, the control of such proceedings on the trial and on

appeal is vested expressly and exclusively in the designated officers of the state. Mathews v. State, 82 Tex. 581, 18 S. W. 711. The procedure prescribed was clearly intended by the Legislature primarily as a method whereby the state could, through the officers therein designated, protect itself and the good of the public generally, either of its own accord or at the instance of some interested party. Staples v. State, 112 Tex. 61, 245 S. W. 639. And such proceedings are just as much authorized in the one instance as in the other. Article 6253, R. S., expressly provides, under the conditions therein named, one of which being that where any person shall usurp or unlawfully hold or execute any office, the Attorney General, or district or county attorney, may, either of his own accord, or at the instance of any individual relator, institute such proceeding in the name of the state.

■ That the district court had jurisdiction is settled. State v. DeGress, 53 Tex. 387; State v. Manry, 118 Tex. 449, 16 S.W. (2d) 809. But appellant contends that such proceeding being strictly a statutory proceeding, which must be instituted in the "proper county," that being the only situs for such litigation designated in the statute, the place of filing such suit is jurisdictional and not a matter of venue; and that this suit, not coming within any of the exceptions to article 1995, R. S., as amended (Vernon's Ann. Civ. St. art. 1995), and appellant being a resident of Bell county, jurisdiction obtained only in Bell county. We do not sustain this contention. This suit is clearly a civil proceeding triable as other civil cases. Article 6256, R. S.; State v. DeGress, supra; Williams v. State, 69 Tex. 368, 6 S. W. 845; Dean v. State, 88 Tex. 290, 30 S. W. 1047, 31 S. W. 185. In quo warranto proceedings against corporations under article 6253, R. S., venue is authorized by article 7431, R. S., in Travis county, or in any district court in the state which the Attorney General may select. The district court is vested with general jurisdiction over such proceedings; and we think it clearly follows that in determining "the district court of the proper county" in which same may be instituted, that question is referable to the general venue statute applicable to "other civil cases." And the appellant not having filed any plea of privilege, or raised that issue by any other plea, must be held to have waived such right, if he were entitled to it. We think, however, that the district court of Travis county was a proper court in which to bring such suit for the reason that the office involved is a state office maintained in Travis county. The highway commission maintains its office in Austin, has its hearings in Austin, receives and opens its bids in Austin, and generally discharges the duties imposed upon it by law in Travis county. While the members of such commission may not reside in Travis county, their principal duties are performable there. Article 6663, R. S.; article 6674i, Vernon's Ann. Civ. St. Under such circumstances we think it is clear that Travis county was a "proper county" in which to bring such suit.

■ The next proposition urged presents the real issue upon which the suit was brought, and which is determinative of appellant's right to the office he claims. That is, whether or not the advice and consent of the Senate to the Governor's nomination requires a two-thirds vote of the Senators present, or a mere majority vote.

Article 4, § 12, of the Constitution applicable to the uncontroverted facts of this case reads as follows: "All vacancies in state or district offices, except members of the legislature, shall be filled unless otherwise provided by law, by appointment of the governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the senate present. If made during the recess of the senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the governor shall, without delay, make further nominations, until a confirmation takes place. But should there be no confirmation during the session of the senate, the governor shall not thereafter appoint any person to fill such vacancy who has been rejected by the senate; but may appoint some other person to fill the vacancy until the next session of the senate, or until the regular election to said office, should it sooner occur. Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter."

Article 6664, R. S. 1925, creating the highway commission, provides: "The Commission shall consist of three citizens of the State. With the advice and consent of the Senate, the Governor shall biennially appoint one member to serve for a term of six years, the classification to continue as constituted by law. The Governor shall designate one such member as chairman. * * *"

We think the language of section 12, art. 4, of the Constitution is plain, clear, unambiguous, and capable of but one construction. That the clause "unless otherwise provided by law" refers to the nominating authority, and has no reference to "the advice and consent of two-thirds of the senate present." This language clearly contemplates that the Legislature may, should it see fit, provide by law for the filling of offices created by it otherwise than by appointment by the Governor, and that in such event confirmation by the Senate is not essential. When the Commission of Appeals was created by the Thirty-Ninth Legislature, article 1781, R. S. 1925, it was provided that they should be appointed by the Governor by and with the consent and

advice of the Senate. But by the Acts of 1930, 41st Legislature, 5th C. S., ch. 2, p. 112 (Vernon's Ann. Civ. St. art. 1800a), this power of appointment was taken away from the Governor and vested in the Supreme Court, and confirmation by the Senate of their appointment no longer required. But where appointment, or perhaps nomination for appointment would be more accurate, is not "otherwise provided by law," that power rests with the Governor. And the clear import, language, and requirement of the Constitution is that any and every appointment by the Governor to fill a vacancy in a state or district office must be with the advice and consent of two-thirds of the Senate as in said section 12 provided. And when the statute, as does article 6664, provides that appointments by the Governor are to be made "with the advice and consent of the Senate," it necessarily must be interpreted to mean the "advice and consent" contemplated and expressly provided for in the Constitution. And where such required advice and consent to such nomination by the Governor is refused, the nominee or appointee is not legally entitled to the office. 46 C. J. 953; 22 R. C. L. 433. These authorities announce such general rule. No authorities, other than the language of the Constitution itself, however, is needed. The language, "If rejected, said office shall immediately become vacant, and the governor shall, without delay, make further nominations, until a confirmation takes place," clearly and by necessary implication denies to a nominee, whose confirmation has been rejected by the Senate, any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof.

■ But, appellant contends, this provision of the Constitution does not apply in the instant case because there was in contemplation of law, no "vacancy" for the reason that the incumbent of such office, under article 16, § 17, of the Constitution, and article 18, R. S., holds over until his successor is appointed and qualifies. Hon. Cone Johnson's term of office expired on February 15, 1933. There is considerable conflict of decision in the various states as to whether the expiration of an incumbent's term of office creates a vacancy in the office in question. The holdings in the various courts on this question rest in large measure upon the wording of the particular Constitutions and statutes involved. See 46 C. J. 969, and cases cited; 22 R. C. L. 555; Annotations in 46 L. R. A. (N. S.) 1202. The question, however, in this state is foreclosed. There has been furnished us a copy of an opinion by Attorney General B. F. Looney given to Hon. James E. Ferguson, while Governor, on February 19, 1917, on facts almost identical with those of the case at bar, wherein, in an able and extensive consideration of this question, the Governor was advised that upon the expiration of the term of an appointive of-

fice, for the purposes of naming the incumbent's successor therein, a vacancy existed within the meaning of section 12 of article 4 of the Constitution. See Ops. Atty. Gen. 1916–1918, p. 392. This conclusion is clearly sustained by the cases of Tom v. Klepper (Tex. Civ. App.) 172 S. W. 721 (writ ref.); Maddox v. York, 21 Tex. Civ. App. 622, 54 S. W. 24, 25; Id., 93 Tex. 275, 55 S. W. 1133; State v. Catlin, 84 Tex. 48, 19 S. W. 302. See, also, 46 C. J. 969; In re Advisory Opinion to Governor, 65 Fla. 434, 62 So. 363, 50 L. R. A. (N. S.) 365; State v. Thomas, 102 Mo. 85, 14 S. W. 108; State v. Williams, 222 Mo. 268, 121 S. W. 64, 17 Ann. Cas. 1006. This question was conclusively disposed of we think in the Klepper Case, and we pretermit further discussion of it here.

■ The remaining contentions of appellant relate to the admissibility in evidence of copies of the Senate Journal to show the action of the Senate in executive session upon Denison's confirmation; and whether or not appellant was entitled to show by testimony of the Senators themselves what the vote of the Senate was in executive session.

We deem it unnecessary to discuss these contentions extensively. The action of the Senate in confirming or rejecting a nomination of the Governor for appointment to office is not a legislative act; and consequently the proceedings in executive session and the Senate's record thereof are not analogous in all respects to the rules and proceedings governing the passage of bills and resolutions. Section 11 of article 3 of the Constitution provides that each House may determine the rules of its own proceedings, section 12 that it must keep and publish a journal of its proceedings, and section 16 authorizes executive sessions by the Senate. Senate Rules Nos. 79 to 84 relate to the consideration of Governor's nominations in executive session and make it the duty of the Secretary of the Senate to return the results to the Governor. Rules 87 to 89 provide for, and the method of, keeping the Senate Journal. Rule 89 provides that the record of the executive sessions shall be kept in a separate book, "but the final result of such session shall be placed upon the Journal of the Senate, and the Secretary shall report the same to the Governor." These rules and proceedings were followed in the instant case. There can be no question but that the official record of the Senate's action is the best and "conclusive evidence of the matters which they purport to show." 12 C. J. 1084, and cases there cited. Such is the import of the constitutional provisions and of the rules of the Senate adopted pursuant thereto. And the return to the Governor advising that the nomination of Denison was "not confirmed" presents the Senate's interpretation of the constitutional provision governing its conduct, and, as above stated, each department of the government must first judge of the Constitution for itself.

But appellant contends that the recital, "Not confirmed," presents a mixed question of law and fact, and that he is entitled to go behind such recital and show by parol testimony what the actual vote of the Senate in executive session was, to enable the court to determine whether, as a matter of law, Denison's nomination was confirmed.

We do not find it necessary to decide this issue. The stricken pleadings of appellant, of which he complains, only alleged that he received a majority vote of the Senators present. The proof tendered, which was excluded, and is brought up by bills of exception, shows that he received a majority vote of the Senators present, but also shows affirmatively that he did not receive a two-thirds majority vote of the Senators present in either instance when his nomination was voted upon. And when the official record of the Senate, the proper evidence of its proceedings, and which imports verity of its recitals, was introduced and showed that the nomination of Denison had been rejected, the burden was upon Denison to show the contrary. And had his pleadings in that regard not been stricken, and had his proffered testimony been admitted in evidence, he not only would have failed, under our conclusions above announced, to show that his nomination to said office was confirmed by the Senate, but would on the contrary affirmatively have shown that his nomination was not confirmed.

The confirmation of the Senate, it being in session at the time the nomination was made, being essential to the right of appellant to hold the office in question, and that confirmation being by the Senate refused, that office, under the express language of the Constitution itself, became immediately vacant, and could be filled by the Governor only in the method prescribed by the Constitution. The commission issued to appellant by the Governor, notwithstanding his rejection by the Senate, was therefore void and vests in him no right to occupy the office claimed by him.

The judgment of the trial court is in all things affirmed.

Affirmed.