

# THE ATTORNEY GENERAL

# OF TEXAS

**AUSTIN 11, TEXAS**

PRICE DANIEL
ATTORNEY GENERAL

July 30, 1949

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

      Opinion No. V-868

      Re: Status of office and salary
        of Hon. E. V. Spence as mem-
        ber of the Board of Water
        Engineers

Dear Sir:

    The request for opinion is stated in your letter
as follows:

    "Under the facts stated below, please
give me your opinion as to whether E. V.
Spence is still a member of the Board of
Water Engineers and as such is entitled to
the salary incident to the position until
such time as he qualifies as Interstate
Compact Commissioner, or until his suc-
cessor on the Board of Water Engineers is
appointed.

    "He was originally appointed to the
Board of Water Engineers as an interim
appointee to fill the vacancy which oc-
curred upon the death of Mr. A. H. Dunlap.
This appointment was made by the Honorable
Coke Stevenson and was duly and regularly
confirmed by the Senate. He qualified in
due course and at the expiration of the in-
terim term was reappointed to the Board by
Honorable Beauford Jester and thereafter
qualified on November 6, 1947, by taking
the statutory oath and making the required
bond. His name was submitted to the 51st
Legislature for confirmation. The Senate
of such Legislature never acted on this
appointment and his name was withdrawn by
Governor Jester on June 23, 1949, with the

consent of the Senate. Governor Jester
did not submit another name for confirm-
ation,has not requested his resignation
and has not appointed anyone else to the
Board of Water Engineers.

"By H.B.594, 51st Legislature, the
office of Interstate Compact Commission
for the Canadian, Red and Sabine Rivers
was created and appropriated the funds
necessary to pay the salaries and carry
out the duties incidental to such office.
This appropriation does not become ef-
fective until the biennium beginning
September 1, 1949. Governor Jester has
appointed Mr. Spence Interstate Compact
Commissioner, and he was confirmed by the
Senate on June 23, 1949. He has not qual-
ified for such office by taking the oath
required by said bill."

In addition to the facts stated in your letter,
we have ascertained that the appointee's name for the
Board position never came out of committee and that no
vote or other official action was ever taken by the
Senate on the appointment other than to consent to the
withdrawal.

The answer to your question is dependent upon
the solution of two separate problems. First, it is
necessary to determine the effect of the Governor's with-
drawal, the Senate consenting, of the appointment to the
Board position upon such appointee's right to continue
as a member of the Board of Water Engineers. Second,
if this has no effect upon the right to membership,
then is his right to the office in any way affected
by his appointment and Senate confirmation to the Of-
fice of Interstate Compact Commissioner? The question
of the right to salary as a member of the Board is de-
pendent upon the right to the office.

The solution to the problem raised by the
Governor's withdrawal of his appointee's name from the
Senate with its consent is in part dependent upon the
following statutory and constitutional provisions:

Article 7478, Vernon's Civil Statutes:

"Said Board (Board of Water Engineers)
shall be composed of three members, one of
whom shall be appointed from each of the re-
spective water divisions described in Arti-
cle 7475. The members of such Board shall
be appointed by the Governor, by and with
the advice and consent of the Senate, and
shall each hold office for a term of six
years, and until his successor is appointed
and qualified."

Article IV, Section 12, Constitution of Texas:

"All vacancies in State or district
offices, except members of the Legislature,
shall be filled unless otherwise provided
by law, by appointment of the Governor, which
appointment, if made during its session, shall
be with the advice and consent of two-thirds
of the Senate present. If made during the
recess of the Senate, the said appointee, or
some other person to fill such vacancy, shall
be nominated to the Senate during the first
ten days of its session. If rejected, said
office shall immediately become vacant, and
the Governor shall, without delay, make further
nominations, until a confirmation takes place.
But should there be no confirmation during the
session of the Senate, the Governor shall not
thereafter appoint any person to fill such va-
cancy who has been rejected by the Senate; but
may appoint some other person to fill the
vacancy until the next session of the Senate
or until the regular election to said office,
should it sooner occur. Appointments to va-
cancies in offices elective by the people
shall only continue until the first general
election thereafter."

Article XVI, Section 17, Constitution of Texas:

"All officers within this State shall
continue to perform the duties of their offices
until their successors shall be duly qualified."

The problem is essentially this. When a recess appointment is made and submitted to the Senate as required by Article IV, Sec.12, but the name is withdrawn before the Senate affirmatively confirms or rejects the appointee, does that portion of Art. IV, Sec. 12, which provides that if such appointee is "rejected, said office shall immediately become vacant", apply so as to bar the appointee of all right to the office from the time his name is withdrawn and prevent his holding over as required by Art.XVI, Sec.17, until another appointment is made?

We find no authority directly in point on this question. Insofar as we have been able to ascertain, the question is one of first impression in Texas. With respect to the situation where there has been an affirmative rejection by the Senate, we find only one case. Even this case leaves some doubt as to the effect, if any, which the holdover provisions of Art. XVI, Sec. 17 have in the case of an affirmative rejection. Denison v. State, 61 S.W.2d 1017 (Tex.Civ. App. 1933, error ref., 122 Tex. 459, 61 S.W.2d 1022).

There are, however, two prior opinions by this office which have construed the effect of Art. IV, Sec.12 upon Art. XVI, Sec.17, where the Senate has affirmatively rejected an executive appointment. These opinions reach opposite conclusions. See Opinion O-3343, approved March 28, 1941, and Conference Opinion 1809, written by the then Attorney General, Hon. B. F. Looney, under date of August 18, 19|7.

We quote from Conference Opinion 1809 as follows:

"I am in receipt of your communication of the 17th inst., on behalf of Senate Committee on public debts, claims and accounts of which you are Chairman, in which you state that during the regular session of the Thirty-fifth Legislature the Senate refused to confirm C. W. Woodman as Labor Commissioner; that during the first called session the Governor submitted to the Senate the name of Frank Swor for confirmation as Labor Commissioner, and he was confirmed by the Senate. You furthermore state that Mr. Swor has failed to take the oath of office as Labor Commissioner,

and, in fact, has failed altogether
to accept and qualify to said office,
and that C. W. Woodman is continuing
to discharge the duties of the office,
and is drawing the salary as Labor Com-
missioner.

"You call attention to the provi-
sions of Section 12, Article 4 of the
Constitution. . .

"After making this statement you
propound the following question:

"Does this article of the Consti-
tution, under the statement of facts set
out herein, authorize the said Woodman
to continue to fill the office of Labor
Commissioner and to draw his salary
therefor?

"If the article of the Constitution
just quoted was the only provision in
the Constitution relating to the subject,
your question should be answered in the
negative. In this connection, however,
I beg to call attention to Section 17 of
Article 16 of the Constitution, as fol-
lows:

"'All officers within this state
shall continue to perform the duties
of their offices until their successors
shall be duly qualified.'

"Construing these different pro-
visions of the Constitution together,
and they must be so construed as to give
meaning to each, I am of the opinion
that Mr. Woodman, under the facts stated,
will continue to discharge the duties of
the office until his successor shall be
appointed and qualified.

"The term 'vacancy' is used with
varying meanings. There may be a con-
structive vacancy and yet the office may

be physically occupied. You will note
the language of Section 17 just quoted.
It does not say that the incumbent after
his term expires shall hold the office,
but 'shall continue to perform the duties
of their offices until their successors
shall be duly qualified. . . .'

"I beg, therefore, to answer your
first question just quoted in the affirm-
ative; that is to say, until the suc-
cessor of Mr. Woodman qualifies he is by
virtue of the Constitution, authorized
to discharge the duties of the office and
to collect the salary therefor.

"If the Governor, instead of nomi-
nating Woodman to succeed himself, had
nominated Brown, and if on the rejection
of Brown by the Senate, the Governor had
nominated Jones, and if Jones after be-
ing confirmed had refused to accept the
office and qualify, as Swor has done, no
one would entertain a doubt but Mr. Wood-
man could, under the circumstances, con-
tinue to discharge the duties of the of-
fice, pending the appointment and qualifi-
cation of his successor."

We quote from Opinion O-3343 as follows:

"We beg to reply to your letter of
March 17, 1941, requesting our opinion as
to whether your tenure of the office of
State Auditor and Efficiency Expert ended
when the Senate rejected your appointment,
or whether it is your duty to hold the of-
fice 'de facto' until another official
is appointed and has qualified. Pertinent
facts are as follows: Your prior term in
the office ended on September 13, 1940, at
which time you were appointed by the Gover-
nor to succeed yourself, after which you
seasonably filed your oath and bond; on
January 22, 1941, the Governor submitted
your name to the Senate for confirmation;
and on March 6, 1941, such confirmation was
rejected. . . .

> "As already noted, Article 16, Section 17 is a general provision, while Section 12 of Article 4 is a special one dealing with this identical problem. To hold that Section 17 is effective here, in our opinion, would be to nullify a part of said Section 12 of Article 4, and thus a general provision would be held to control the special one, which is contrary to the well established rule of construction. On the other hand, there is ample room for Article 16, Section 17, to operate without applying it to this kind of situation. Under the interpretation which we have given both provisions survive and function.

> "It is our considered opinion that your duties and tenure of office ended on March 6, 1941, when your appointment was rejected by the Senate."

It is evident that the point of conflict between these opinions is whether Art. IV, Sec.12 and Art. XVI, Sec.17 should be construed together so as to permit a rejected appointee to hold over. This precise question was not before the court in Denison v. State, supra. The court mentioned both constitutional provisions. But it mentioned them only in connection with the contention by the rejected appointee, Denison, that Art. IV, Sec.12 had no application to his situation (in effect that the Senate was not required to confirm his appointment) since under Art. XVI, Sec.17 there was no vacancy in office, it being the duty of the incumbent, one Johnson, to hold over after the expiration of his term. The court found that in Texas the expiration of a term of office creates a vacancy, which the Governor may fill by appointment under Art. IV, Sec.12. However, the court did say that Art. IV, Sec.12 "denies to a nominee, whose confirmation has been rejected by the Senate, any right whatever to occupy the office or to discharge, after such rejection, any of the duties thereof." If the court intended by this to say that a rejected appointee may not hold over under Art. XVI, Sec. 17 until a confirmation is had, then it is obvious that a hiatus in office may result. Had Denison instead of Johnson been the incumbent and had he been appointed to succeed himself, could he have held

over under Art. XVI, Sec.17?  Since this question
and because the matter of who held over in the of-
fice, if anyone, was not before the court, the case
is not authority except perhaps in the case of an
affirmative rejection.

On the question of whether or not the end
of a term of office creates a vacancy in office,
Texas appears to be in the minority.  People v. Chris-
tian, 123 P.2d 368-372 (Wyo. Sup.1942); Denison v.
State, supra, and cases therein cited.  Under the rule
followed by the majority of states, the incumbent holds
over after his term, either by virtue of constitution-
al or statutory provisions, and unless he resigns, dies
or abandons the office, remains in the office until the
new appointee has been confirmed by the Senate and un-
til he qualifies.  Under this rule a recess appointee
would not be entitled to the office by virtue of ap-
pointment alone but would be required to wait until
the next meeting of the Senate and confirmation by
that body before he could enter the office, the incum-
bent in the meantime holding over.  However, if the
incumbent resigns, dies, or abandons the office, a
vacancy occurs in the sense that the new appointee may
enter the office.  People v. Christian, supra.  Since
in Texas the end of a term of office creates a vacancy,
in the sense that a new appointee can enter the office,
a new appointment may be made and such appointee is en-
titled to the office.  The real basis of the distinc-
tion between the majority view and the view in Texas is
with respect to the time when and the circumstances
under which the new appointee may undertake the office.

In adopting the so-called minority view, we
doubt that the Texas courts intended to thereby create
a situation under which a hiatus in office could or
might occur.  As stated in the decisions of the courts
adopting either view, their purpose is to prevent a
hiatus in office.  This is done in Texas by permitting
the new appointee to at once take office even though
the appointment be incomplete, and in other states
by insuring holding over by the incumbent until the
new appointment is in fact complete.  It is obvious
that no hiatus could occur under the majority view.
It is equally obvious that in Texas unless the new
appointee be permitted to hold over until his successor
qualifies, a hiatus will result.  To apply the holding
of Opinion O-3343 or construe the holding in Denison
v. State as applicable to the facts here, would tend

to create rather than prevent hiatus in office, and would be going further than we believe the Texas courts intended to go in adopting their minority view. In addition, Art. XVI, Sec.17 is denied any application. Opinion O-3343 and the court's opinion in Denison v. State, supra, are predicated upon the express language of Art. IV, Sec.12, relating to rejections. Clearly then, unless there is an express rejection, Art. IV, Sec. 12 must be construed together with Art. XVI, Sec.17 as indicated by Conference Opinion 1809. Where, as here, the Senate takes no action on the appointment, the appointee holds over pursuant to Art. XVI, Sec.17 until he resigns, dies, abandons the office, or until his successor is appointed.

Our answer to the problem raised by the appointment and confirmation of E. V. Spence to the office of Interstate Compact Commissioner is dependent upon whether or not he now occupies such office.

Membership on the Board of Water Engineers and holding the office of Interstate Compact Commissioner, both offices of emolument, would clearly be in violation of Art. XVI, Sec.40 of the Constitution of Texas. When the same person occupies two such offices, his acceptance and qualification for the second office ipso facto and as a matter of law vacates the first office. But until there is an acceptance and qualification for the second office he does not occupy it and there is no abandonment or vacation of the first office. Biencourt v. Parker, 27 Tex. 558 (1864); State v. Brinkerhoff, 66 Tex.45, 17 S.W.109 (1886); Odem v. Sinton Ind. School District, 234 S.W. 1090 (Com. App. 1921); Martin v. Grandview Ind. School District, 266 S.W.607 (Tex.Civ.App.1924, error ref.); State v. Valentine, 198 S.W. 1006 (Tex.Civ.App. 1917, error ref.); Pruitt v. Glen Rose Ind. School District, 126 Tex.45, 84 S.W.2d 1004, 100 A.L.R.1158 (1935); 34 Tex. Jur. 352.

There appears to be some conflict in Texas whether acceptance and entering the duties of the second office, without formal qualification by taking the oath or making the bond, will vacate the first office, or whether there must be in addition a formal qualification to the second office before the first is vacated. Compare Odem v. Sinton Ind. School District (supra) with Martin v. Grandview Ind. School District (supra) and

Keel v. Railroad Com., 107 S.W.2d 439 (Tex.Civ.App. 1937, error ref.). Nevertheless, we understand the facts here to be that E. V. Spence is still serving on the Board, has not begun his duties as Commissioner, has not qualified as Commissioner by taking the oath, and has otherwise made no formal acceptance of the office of Interstate Compact Commissioner. It seems clear that he does not occupy the second office to which he has been appointed and confirmed under circumstances which would constitute an ipso facto vacation of his Board membership.

It is our opinion that E. V. Spence is still a member of the Board of Water Engineers by virtue of Article XVI, Sec.17 of the Constitution and will so remain until his successor is appointed and qualifies, or until he accepts and qualifies for the office of Interstate Compact Commissioner. Such being the case, he is entitled to the salary incidental to his Board membership.

According to House Bill 594, 51st Legislature, the salary of the Interstate Compact Commissioner does not commence until September 1, 1949. Even though the Act by virtue of its emergency clause and passage by the necessary vote became effective upon its passage, we doubt that the Legislature intended that the office be occupied by the appointee, or that he accept and qualify, until the salary to which the office is entitled becomes available.

## SUMMARY

A recess appointee, requiring Senate confirmation, who was appointed to succeed himself and whose name is withdrawn with the consent of the Senate, continues to hold over in office under Article XVI, Sec.17, Constitution of Texas, until his successor is appointed and qualifies.

Executive appointment and Senate confirmation of the same person for a second office of emolument does not vacate the first office until there has been an acceptance and qualification for the second office. Odem v.

Sinton Ind. School District, 234 S.W.
1090 (Comm. App.1921); Pruitt v. Glen
Rose Ind. School Dist., 126 Tex.45,
84 S.W.2d 1004 (1935).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        H. D. Pruett, Jr.
                    Assistant

HDP:bt

APPROVED

*Price Daniel*

ATTORNEY GENERAL